## IRVING TRUST CO. et al. v. FLEMING et al. (two cases).
### Nos. 3699, 3700.

Circuit Court of Appeals, Fourth Circuit.
Oct. 2, 1934.

See, also (C. C. A.) 69 F.(2d) 517.

Godfrey Goldmark, of New York City (J. Harper Meredith and Haymond & Haymond, all of Fairmont, W. Va., Douglas M. Black and Max Freund, both of New York City, and D. H. Hill Arnold, of Elkins, W. Va., on the brief), for appellants.

H. W. Russell, of Parkersburg, W. Va. (Moreland & Guy, of Morgantown, W. Va., Deveny & Furbee, of Fairmont, W. Va., Russell, Hiteshaw, Adams & Hill, of Parkersburg, W. Va., James R. Moreland, of Morgantown, W. Va., and Russell L. Furbee and C. Brooks Deveny, both of Fairmont, W. Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order dismissing the petition of the trustee in bankruptcy of the McCrory Stores Corporation, which sought an order requiring receivers of a West Virginia state court to turn over property

alleged to belong to the bankrupt estate. An understanding of the questions presented by the appeal requires a statement as to (1) the relationship existing between the McCrory Stores Corporation and the J. G. McCrory Company of West Virginia, (2) certain proceedings in bankruptcy relating to both corporations in the Southern District of New York, (3) receivership proceedings relating to the J. G. McCrory Company in the state courts of West Virginia, and (4) the proceedings on the petition for the summary order in which appeal was taken from the court below.

The McCrory Stores Corporation, which we shall refer to as the parent corporation, was organized under the laws of Delaware and had its principal place of business in the Southern District of New York. It was engaged in operating a chain of five and ten cent stores in various states of the Union through the agency of local corporations, the stock of which was owned and held by it. One of these local corporations was the J. G. McCrory Company of West Virginia, which we shall refer to hereafter as the subsidiary corporation. This corporation had an office in the Southern District of New York but operated a chain of stores in West Virginia. According to the allegations of the receiver in bankruptcy of the parent corporation made in the Southern District of New York, to which we shall refer more at length hereafter, the initial capital of this subsidiary was furnished by the parent and all of its subsequent requirements of capital were supplied by the parent and were evidenced by notes of the subsidiary or by open accounts. Both corporations had the same officers and directors, and the district and store managers of the subsidiary were employed and paid by the parent. All merchandise in the stores of the subsidiary was purchased by the parent; and moneys collected by the subsidiary, except what was necessary for the payment of local salaries and other minor local charges, were transmitted to it. Dividends were paid by the parent out of the moneys sent it by the subsidiaries, which paid no dividends. In other words, the contention of the receiver was that, while local business was done in the name of the subsidiaries, and contracts for the rental of property were made in their names, this business was handled as though the various subsidiaries were but departments of one business, which was owned and operated by the parent, and that the latter was in reality the owner of the property which apparently belonged to the subsidiaries.

On January 14th the parent corporation was adjudged a bankrupt on its voluntary petition filed in the Southern District of New York, and the Irving Trust Company was appointed receiver in bankruptcy of its affairs pending the election of a trustee. The receiver immediately took over and began operating the business of the bankrupt including the business carried on in the stores in West Virginia, which was conducted in the name of the subsidiary, the J. G. McCrory Company. On January 30th, the Irving Trust Company, as receiver in bankruptcy, filed a petition with the District Court for the Southern District of New York setting forth the facts with regard to the relationship between the parent corporation and its subsidiaries as above outlined, and asked that the assets of the subsidiaries, wherever situate, be adjudged and held by the court to be assets and property of the bankrupt, and that they be administered by the court in the proceeding then pending, wherein the parent corporation had been adjudged bankrupt. A notice to show cause the next day before the referee in bankruptcy, as to why the prayer of this petition should not be granted, was served upon the subsidiary corporations including the J. G. McCrory Company of West Virginia. Attorneys for the subsidiaries entered appearances in their behalf before the referee, but did not oppose the prayer of the petition; and an order was accordingly entered on January 31st decreeing that all the assets of the subsidiaries were, at the time of the filing of the petition in bankruptcy, "the property and assets of the bankrupt," and that title thereto was then in "Irving Trust Company as Trustee in Bankruptcy." That company, originally appointed receiver, had been appointed, or elected, trustee in bankruptcy on the same day that the order was signed. On the same day the subsidiaries, on their voluntary petitions, were adjudged bankrupts; and subsequently one R. O. Smith was appointed trustee in bankruptcy for all of them. The Irving Trust Company, trustee in bankruptcy of the parent corporation, however, continued in possession of the assets of the subsidiaries covered by the order of January 31st. Smith, trustee of the subsidiaries, has not attempted to take possession of anything, and the bond required of him is for the sum of only $100.

On March 21, 1933, after the Irving Trust Company as trustee in bankruptcy of the parent corporation had been in possession of the property in the West Virginia stores of the McCrory Company, and had been operat-

ing these stores for a period of more than two months, three landlords who had entered into lease contracts with the J. G. McCrory Company, the West Virginia subsidiary, entered suit against that company in the circuit court of Marion county, W. Va., and procured the appointment of receivers for it, who took into their possession the property in the West Virginia stores and began operating these stores under the order of the West Virginia court. The bill of complaint in the suit in which these receivers were appointed set forth the bankruptcy of the parent corporation in the Southern District of New York and the order of January 31st relating to the assets in the hands of its subsidiaries, but denied that either the parent corporation or the subsidiary was insolvent and averred that the order with reference to the assets of the subsidiary was fraudulently obtained for the purpose of hindering, delaying, and defeating the rights of the creditors of the subsidiary.

On April 15th the trustee in bankruptcy of the parent corporation filed its petition with the circuit court of Marion county asking that the receivers of that court be required to restore to it, as trustee in bankruptcy, the property and assets which had been taken from it by those receivers. This petition, after reciting the adjudication in bankruptcy of the parent corporation, averred that petitioner as receiver of the bankrupt had taken into its possession, custody, and control all of the property of the bankrupt, including that in the custody of its subsidiaries; that the order of January 31st had adjudged this property to be the property of bankrupt; and that since that date petitioner had been in possession of same as trustee in bankruptcy, and had been operating these stores in that capacity, until the possession of the property in the West Virginia stores was seized by the receivers of the circuit court of Marion county on March 23d. The petition recited that petitioner was appearing specially for the sole purpose of asking a return of the property which had been taken from its possession, asked that a hearing be had upon the matters alleged in its petition and that the receivers be required to restore the property which had been seized from it, and that so much of the order of the court be set aside as appointed receivers and directed them to take possession of and control the property in question and forbade other persons from interfering with them in the performance of the duties so imposed.

The plaintiffs in the state court demurred to this petition on the grounds: (1) That the parent corporation had never owned the property in the hands of the receivers, and (2) that the referee in bankruptcy did not have jurisdiction to enter the order of January 31st adjudicating title thereto. They also filed two special pleas. The first averred that the parent corporation, not having complied with section 79, article 1, ch. 31, Code of 1931 of West Virginia, was not qualified to transact business in that state. The second charged that the trustee was attempting to exercise the powers of a banking corporation without complying with section 7, article 4, of chapter 31 of the Code. The trustee in bankruptcy demurred to these special pleas, and the circuit court, in an order of May 10, 1933, sustained the demurrers thereto but certified to the Supreme Court of Appeals the questions arising thereon. That court on December 12, 1933, reversed the circuit court, holding that, as a foreign corporation could not hold property in the state without complying with the state statute, the parent corporation never had title to the property in question, that the court of bankruptcy in New York was without jurisdiction to adjudicate the title in the order of January 31st, and that the bill alleged a fraud perpetrated upon the bankruptcy court for the purpose of defeating the rights of the creditors of the subsidiary corporation. See Fleming v. J. G. McCrory Co., (W. Va.) 174 S. E. 325. A petition for rehearing was presented by the trustee in bankruptcy to the Supreme Court of Appeals of West Virginia and was denied by that court on March 27, 1934.

After the circuit court, over the protest of the trustee in bankruptcy, had certified to the Supreme Court of Appeals the questions raised by the various demurrers and special pleas, the trustee in bankruptcy invoked the ancillary jurisdiction in bankruptcy of the District Court of the United States for the Northern District of West Virginia, filing with that court a petition on June 8, 1933, which asked a summary order requiring the receivers of the state court to turn over to the trustee in bankruptcy the property in controversy which had been seized by them. This petition set forth the proceedings had in the Southern District of New York and the proceedings up to that time in the courts of West Virginia. It averred that the property in controversy was in fact the property of the bankrupt parent corporation prior to the adjudication of bankruptcy; that since adjudi-

cation the title thereto had been in the trustee; and that the trustee had had possession thereof until March 23, 1933, when same had been seized and taken from its possession by the receivers of the state court. It further averred that the application to the state court for the return of the property had been made as a mere matter of comity and out of respect to the state jurisdiction, and asked that, notwithstanding that application and the action of the state court thereon, the receivers be required to recognize the superior jurisdiction of the court of bankruptcy in the administration of the bankrupt estate by returning the property taken by them from the possession of the trustee, and that they be restrained from further interfering with the trustee in the discharge of its duties. The trustee in bankruptcy of the subsidiary corporation also filed a petition, joining in the prayer that the receivers of the state court be required to return the property to the trustee in bankruptcy of the parent corporation.

An order to show cause was issued by the court below based on the petition of the trustees in bankruptcy of the parent and subsidiary corporations; and on July 3d the receivers of the state court filed a motion to dismiss in the nature of a demurrer averring that the petition stated no ground for relief. They filed also another motion to dismiss based on three grounds, viz.: (1) That the questions raised by the petition were pending in the Supreme Court of Appeals of the state on the certificate of the circuit court; (2) that the petition against the receivers of the state court had been filed without the consent of that court; and (3) that the relief sought could not be obtained in a summary proceeding but only by plenary suit. The District Judge delayed action until after the decision of the Supreme Court of Appeals. He then sustained the motion to dismiss on the ground that the parent corporation was not the owner of the property in controversy, but indicated that, had Smith, the trustee of the subsidiary corporation, asked the possession of the property, his prayer would have been granted. From the order dismissing the petition, this appeal is prosecuted.

 A careful consideration of the opinion of the learned judge below (In re McCrory Stores Corporation [D. C.] 8 F. Supp. 811), and of that of the Supreme Court of Appeals of West Virginia, convinces us that the matter of crucial importance in determining the right of the trustee in bankruptcy of the parent corporation to the possession of the property in controversy

has been overlooked by both of them, i. e. that it was in the possession of the trustee in bankruptcy, as an officer of the court, at the time of its seizure by the state court receivers. We need not consider whether title was in the parent corporation or in the subsidiary, nor whether the decree of the referee in bankruptcy with reference thereto was obtained by fraud. It is admitted that the parent corporation had been adjudged a bankrupt and that the Irving Trust Company had been appointed its trustee in bankruptcy. It appears that the trustee had taken possession of the property in controversy; and the motion to dismiss in the nature of a demurrer admits this fact, which was properly pleaded in the petition filed in the court below. The question, then, on the application for the turn over order, is, not whether the parent corporation had title to the property in controversy, nor whether the decree directing the trustee to take possession thereof was properly entered, but whether a trustee in bankruptcy in possession of property may be deprived of that possession by the officers of a state court. We think that this question must be answered in the negative.

██ That the trustee in bankruptcy was in possession of the property in controversy at the time of the institution of proceedings in the state court does not admit of doubt, quite apart from the admission of the fact which necessarily arises from the motion to dismiss in the nature of a demurrer. The trustee had been operating the West Virginia stores for more than two months prior to the institution of the state court proceedings. It had been purchasing merchandise for sale in these stores, receiving the moneys remitted by them, employing and paying the managers which had them in charge, and otherwise exercising complete dominion and control over them. Neither the subsidiary corporation, which had been adjudged bankrupt, nor its trustee in bankruptcy exercised any control whatever over this property, whereas the trustee in bankruptcy of the parent corporation had taken complete possession of it and was operating the stores as property of the parent under order of court. It is settled beyond question that, upon an adjudication of bankruptcy, the title to all property of the bankrupt, wherever situate, vests in the trustee as of the date of the adjudication (Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 737, 51 S. Ct. 270, 75 L. Ed. 645); and it is the duty of the trustee, upon his appointment and qualification, to take possession of the property of the bank-

rupt wherever situate and administer it. In this day of far flung business enterprises, it is hard to see how the trustee could perform this duty in a case such as this if the dominion which the trustee is shown to have exercised here would not bring the property within the jurisdiction of the court of his appointment for the purposes of administration.

Since, therefore, the District Court for the Southern District of New York, through its trustee in bankruptcy, was in possession of the property in controversy, we think that that court alone had jurisdiction to determine rights in and claims against that property, and that no other court had any right to interfere with its possession. As said by Mr. Justice Brandeis speaking for the Supreme Court of the United States in the recent case of Ex parte Baldwin, 291 U. S. 610, 54 S. Ct. 551, 553, 78 L. Ed. 1020: "The power is not peculiar to bankruptcy or to the federal courts. It is an application of the general principle that, where a court of competent jurisdiction has, through its officers, taken property into its possession, the property is thereby withdrawn from the jurisdiction of other courts. Having possession, the court may not only issue all writs necessary to protect its possession from physical interference, but is entitled to determine all questions respecting the same. Julian v. Central Trust Co., 193 U. S. 93, 112, 24 S. Ct. 399, 48 L. Ed. 629; compare Riehle v. Margolies, 279 U. S. 218, 223, 49 S. Ct. 310, 73 L. Ed. 669; Straton v. New, 283 U. S. 319, 51 S. Ct. 465, 75 L. Ed. 1060. The jurisdiction in such cases is exclusive of the jurisdiction of other courts, although otherwise the controversy would be cognizable in them. Murphy v. John Hofman Co., 211 U. S. 562, 569, 29 S. Ct. 154, 53 L. Ed. 327. In bankruptcy, this rule applies regardless of whether the property is located in the district in which the bankruptcy proceeding originated." See, also, Isaacs v. Hobbs Tie & Timber Co., supra; White v. Schloerb, 178 U. S. 542, 20 S. Ct. 1007, 1009, 44 L. Ed. 1183; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Covell v. Heyman, 111 U. S. 177, 4 S. Ct. 355, 28 L. Ed. 390; Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 54, 28 S. Ct. 182, 52 L. Ed. 379; Butler v. Ellis (C. C. A. 4th) 45 F.(2d) 951, 953; Tidewater Plumbing Supply Co. v. Schimmel (C. C. A. 4th) 296 F. 459, 461. The rule is of peculiar importance as applied to bankruptcy cases; for the administration of estates in bankruptcy would be an impossible task if the courts of the several states were allowed to take from the courts of bankruptcy, to which Congress has intrusted the administration of the bankruptcy law, the possession of property while it was being administered in bankruptcy by these courts.

And we think it equally clear that jurisdiction over the property in controversy was not lost because possession thereof was actually taken by the state court receivers. Such wrongful interference with the court's possession did not confer jurisdiction upon any other court to deal with the property; but, on the contrary, the court whose jurisdiction had been thus invaded possessed plenary power by summary process to require the return of the property taken out of the hands of its officer. White v. Schloerb, supra; Taubel-Scott-Kitzmiller Co., Inc., v. Fox, 264 U. S. 426, 432, 433, 44 S. Ct. 396, 68 L. Ed. 770; Whitney v. Wenman, 198 U. S. 539, 553, 25 S. Ct. 778, 49 L. Ed. 1157; Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028; Peck v. Jenness, 7 How. 612, 625, 12 L. Ed. 841; In re Williams (D. C.) 53 F.(2d) 486; In re Retail Stores Delivery Corporation (D. C.) 5 F. Supp. 892, 893. The case of White v. Schloerb is directly in point. In that case a sheriff under a writ of replevin from a state court had seized property in possession of a court of bankruptcy. The Supreme Court held that the latter court had jurisdiction by summary proceedings to compel the return of the property seized, saying: "We are of opinion that the judge of the court of bankruptcy was authorized to compel persons who had forcibly and unlawfully seized and taken out of the judicial custody of that court property which had lawfully come into its possession as part of the bankrupt's property, to restore that property to its custody."

And neither the jurisdiction of the court of primary jurisdiction over the property, nor the jurisdiction of the court of ancillary jurisdiction to award summary process to compel its return, was surrendered by the action of the trustee in petitioning the state court. The trustee was without power to surrender the jurisdiction of the court appointing him over property in its possession, as not even the bankruptcy court itself had power to surrender that jurisdiction. Gross v. Irving Trust Co., 289 U. S. 342, 344, 53 S. Ct. 605, 606, 77 L. Ed. 1243, 90 A. L. R. 1215; Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 739, 51 S. Ct. 270, 75 L. Ed. 645. And as the jurisdiction of the bankruptcy court over the property was exclusive, the state court could have acquired no jurisdic-

428

tion to deal with it because of the action of the trustee in filing the petition. A proper respect for the state court required that the trustee make application to it for the return of the property, just as it is proper to ask a state court for an order of removal in a case where a proper petition and bond for removal have been filed in a case properly removable into the federal court (see Williams v. N. Y., P. & N. R. Co. (C. C. A. 4th) 11 F. (2d) 363, 367, 45 A. L. R. 437), but a refusal of the state court to take the proper action no more divests the jurisdiction of the federal court in the one case than in the other. Such a course of action toward a state court was approved in Gross v. Irving Trust Co., supra, where the court, while holding that the state court had no jurisdiction to fix the compensation of its receivers who had been appointed within four months of an adjudication of bankruptcy, said: "Nevertheless, due regard for comity—which means, in this connection, no more than judicial courtesy between the courts undertaking to deal with the same matter—would suggest that ordinarily the trustee in bankruptcy might well be instructed by the bankruptcy court, before taking final action, to request the state court to recognize the exclusive jurisdiction of the former and set aside any orders already made conflicting therewith, as was done with good results in the case of In re Diamond's Estate, supra (C. C. A.) 259 F. 70, 72, 75."

In the case cited by the Supreme Court (In re Diamond's Estate (C. C. A. 6th) 259 F. 70, 73), the court was dealing with a summary order directing the receiver of a state court to turn over funds covered by an allowance to the receivers. The trustee in bankruptcy had petitioned the state court for an order directing that the property be delivered to him, and that court had directed the turning over of all of the property except $1,175 awarded the receiver for his services. In holding that the District Court had power in summary proceedings to direct the turning over of this also, and that it was not bound by the state court's order, notwithstanding the appearance in that court of the trustee, the Circuit Court of Appeals said: "The broad question involved is whether the bankruptcy court had power, by summary order, to compel the state court receiver to turn over the money to the bankruptcy court, to await its action upon the question of compensation, fees, and disbursements of that receiver. We think this question must be answered in the affirmative. From the time the petition in

bankruptcy was filed the property of the bankrupt estate was constructively in the custody of the law. Acme Co. v. Beekman Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208. Upon the adjudication of bankruptcy, the District Court acquired jurisdiction essentially exclusive to administer the estate of the bankrupts generally, including the determination of claims to or liens upon their property, as well as questions of disbursement and distribution generally. In re Watts & Sachs, 190 U. S. 1, 27, 23 S. Ct. 718, 724, 47 L. Ed. 933; U. S. Fidelity Co. v. Bray, 225 U. S. 205, 217, 32 S. Ct. 620, 56 L. Ed. 1055; In re Martin (C. C. A. 6) 193 F. 841, 846, 113 C. C. A. 627. The property so subject to its jurisdiction included that in its constructive as well as in its actual possession (Orinoco Co. v. Metzel [C. C. A. 6] 230 F. 40, 144 C. C. A. 338); and upon the adjudication of bankruptcy the trustee's title to the property and funds of the bankrupt related back to the time of filing the petition for bankruptcy adjudication (Everett v. Judson, 228 U. S. 474, 478, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. [N. S.] 154; Bailey v. Baker Co., 239 U. S. 268, 275, 276, 36 S. Ct. 50, 60 L. Ed. 275; Toof v. Bank [C. C. A. 6] 206 F. 250, 251, 124 C. C. A. 118). This exclusive jurisdiction the bankruptcy court was not at liberty to surrender (Fidelity Co. v. Bray, supra, 225 U. S. at page 218, 32 S. Ct. 620, 56 L. Ed. 1055); and after bankruptcy supervened the state court (broadly speaking) no longer had power, unless under circumstances of emergency not applicable to the order here, to so dispose of the bankrupt's estate, in whole or in part, as to deprive the bankruptcy court of power to determine finally the propriety of such disposition."

In the case of In re Hecox (C. C. A. 8th) 164 F. 823, 825, the rule was laid down that the trustee should as a matter of courtesy apply to the state court, where its receivers were wrongfully withholding from him property to which the bankruptcy court was entitled, but that, upon the refusal of the state court to order the property delivered to him, the court of bankruptcy should protect its jurisdiction by summary order, requiring delivery. The court said: "As the receiver in question was appointed by the state court within four months next preceding the filing of the petition in bankruptcy, the debtor being insolvent, his appointment constituted an act of bankruptcy. In contemplation of the bankrupt act, in so far as concerned his right to the custody of the property of the bankrupt,

he stood as if he had never been appointed by the state court. In such situation, as he holds the property not in his own right, but solely in his claimed official capacity, it was his duty, on notification and demand by the trustee in bankruptcy, to deliver the property to him. But inasmuch as he was the appointee of the state court, as a mere act of courtesy, sometimes, but hardly accurately, termed 'judicial comity,' the bankrupt court in the first instance directed the trustee to prefer a request to the state court for an order on its receiver to deliver the property in his custody to the trustee. In such case, if the state court decline to reciprocate the consideration thus paid to its dignity, the law is well settled that it is then competent for, and the duty of, the bankrupt court to order the receiver to deliver the property over to the trustee, and he would be in contempt if he refuse to comply therewith."

In Miller v. Potts (C. C. A. 6th) 26 F. (2d) 851, 853, the Circuit Court of Appeals of the Sixth Circuit expressly held that the action of the state court in denying a petition of a trustee in bankruptcy for the surrender to him of property held by its receivers was not binding upon the court of bankruptcy as res adjudicata in a subsequent proceeding in that court to gain possession of the property. The court said: "Concededly, when properly invoked, the jurisdiction of the federal court in relation to bankruptcy matters is paramount and may be exclusive. It follows that the federal court cannot be, and in the instant case was not, bound by the original decision of the state court as res adjudicata, because the trustee in bankruptcy, in deference to the state court, appeared therein, asked for, and was denied a surrender of the property. In re Diamond's Estate (C. C. A.) 259 F. 70."

In Gamble v. Daniel (C. C. A. 8th) 39 F.(2d) 447, 454, the Circuit Court of Appeals of the Eighth Circuit again dealt with the question and the rule was thus stated by Judge Stone: "It should be stated that the receiver proceeded in a proper manner. He requested possession from appellant; then requested, informally, an order from the state court upon appellant, and, thereafter, formally applied for such order. Only after meeting refusal in each instance did he apply for this summary order. Both appellant and the state court were given an opportunity to do what should have been done. It is unfortunate that differences of opinion should result in such conflicts, but, where they occur, the issues must be squarely met, and there can be no question of the precedence of the Bankruptcy Act nor of the duty of the federal courts to sustain that act and the jurisdiction, rights, and duties thereunder."

For the reasons stated, there was error in dismissing the petition of the Irving Trust Company, and the order appealed from will be reversed.

The question arises as to whether the proper method of review was by appeal under section 24 (a) of the Bankruptcy Act (11 USCA 47 (a), or by appeal to superintend and revise under section 24 (b) of the act, 11 USCA 47 (b). As the proceeding was instituted for the recovery of property in the possession of the receivers, to which they asserted an adverse claim, it is "a controversy arising in a bankruptcy proceeding" as distinguished from an administrative "proceeding" in bankruptcy, and it is therefore reviewable by appeal under section 24 (a). Lamb v. Townshend (C. C. A. 4th) 71 F.(2d) 590, 594 and cases there cited. In No. 3699, therefore, the order appealed from will be reversed. In No. 3700, the appeal to superintend and revise will be dismissed.

No. 3699 reversed.

No. 3700 appeal dismissed.