**In re CLUB NEW YORKER.**

No. 27185.

District Court, S. D. California,
Central Division.

May 5, 1936.

Charles J. Katz and Alfred Gitelson, both of Los Angeles, Cal., for petitioning creditor.

Victor A. Gillespie, of Los Angeles, Cal., for attaching creditor.

YANKWICH, District Judge.

On December 31, 1935, and before the adjudication, an action was begun by Roy Cutter (to be hereinafter referred to as "the attaching creditor") against the bankrupt Frank Kerwin, doing business as the Club New Yorker, and others in the municipal court of the city of Los Angeles,

county of Los Angeles, state of California, a court of record. An attachment was issued and levy made upon the business of the bankrupt on the same day by the marshal of the city of Los Angeles. Upon the deposit by Frank Kerwin with the marshal of a cash bond in the amount of $275.00, the attachment was released. On January 10, 1936, an involuntary petition in bankruptcy was filed against the Club New Yorker, a partnership alleged to consist of Frank Kerwin, Al Kerwin, and certain fictitious persons, to be referred to hereinafter as "the partnership bankrupt," and Walter C. Durst was appointed receiver. On January 28, 1936, the two named persons sued as partners filed their answers denying bankruptcy. Frank Kerwin, in his answer, stated that the business was not a partnership, but that he was its sole and exclusive owner and that he was insolvent. Coincident with this he filed his schedules. The partnership was adjudicated a bankrupt on January 31, 1936. On January 29, 1936, Frank Kerwin filed a voluntary petition in which an adjudication was entered on the same day; Walter C. Durst being chosen trustee. He will be hereinafter referred to as "the individual bankrupt." On February 18, 1936, an order was entered consolidating the two estates. On February 4, 1936, the municipal court entered its judgment in the case of Cutter v. Kerwin et al., in favor of Cutter, in the sum of $282.01. On February 25, 1936, the municipal court made an order ordering that the marshal release to Cutter sufficient of the money deposited as a cash bond to satisfy in full the judgment. The order was never executed, for prior to that date, upon the petition of Walter C. Durst, receiver in the partnership bankruptcy and trustee in the individual bankruptcy, the referee issued an order to show cause directed to Cutter requiring him to appear and to show cause why the attachment should not be declared void as against the bankrupt estate and the money in the hands of the marshal be ordered delivered to Durst as receiver in the partnership bankruptcy and as trustee in the individual bankruptcy. Cutter, in his answer to the order to show cause, denied the insolvency of both the partnership and the individual. He also attacked the jurisdiction of the court and pleaded the judgment in the municipal court as res adjudicata. On March 11, 1936, the referee made his order declaring the attachment void and setting it aside against the trustee. He quieted the title of the trustee to the fund in the hands of the marshal and ordered the marshal to deliver and pay the money to him.

While the petition sought the order in Durst's double capacity, the order refers to him as trustee only. It was entered in the consolidated cases. The matter is here upon Cutter's petition for review.

Section 67f of the Bankruptcy Act, 11 U.S.C.A. § 107 (f), declaring all levies, attachments, and other liens obtained through legal proceedings against an insolvent person within four months prior to the filing of a petition in bankruptcy against him to be deemed null and void in case he is adjudged a bankrupt, and vesting the property affected by the levies in the trustee, was amended on June 7, 1934 (48 Stat. 924, c. 424, § 5, 11 U.S.C.A. § 107 (f) so as to extend its provisions to bonds given to dissolve the liens referred to in the section and to nonexempt property of the bankrupt deposited or pledged as security for such bonds. Prior to this amendment the section was held not to apply to such bonds. See In re Mercedes Import Co. (C.C.A.2, 1908) 166 F. 427; Brown v. Four-In-One Coal Co. (C.C.A. 6, 1923) 286 F. 512, certiorari denied (1923) 262 U.S. 749, 43 S.Ct. 524, 67 L.Ed. 1213. The object of the legislation was therefore to place bonds and property deposited for the release of liens in the same category as the liens themselves.

The inquiry therefore turns upon the question: What is the effect of an adjudication upon an attachment or the proceeds of an attachment?

The answer is contained in the very language of the section. All (1) liens, (2) obtained through legal proceedings (3) within four months before the filing of the petition and (4) while the person was insolvent, are nullified by the adjudication in bankruptcy. The proceeds of an execution or attachment sale in the hands of a state officer or in the hands of a state court pass to the trustee, if the levy was made within four months and while the bankrupt was insolvent. See Gilbert's Collier on Bankruptcy (3d Ed.) § 690; Remington on Bankruptcy (4th Ed.) §§ 1857, 1911.

In the application of these general principles some difficulties have arisen due to the variety of circumstances under

which they have been given effect. There can be no summary turnover at the behest of a receiver in bankruptcy. See In re Fuller (C.C.A.2, 1923) 294 F. 71; In re Oliver (D.C.Mich.1924) 298 F. 671. Rightly so, because the receiver in bankruptcy takes no title to the property. He is a mere custodian until the trustee takes charge following adjudication. And, while he may take over property as to which there is no dispute, he is not entitled to take possession of any property against which a claim of title is made by others. The trustee, of course, is in a different position. In him is vested the title to the property of the bankrupt, upon his appointment. And that title reverts back to the date of the adjudication. Bankruptcy Act, § 70a, as amended by act May 27, 1926, § 16, 11 U.S.C.A. § 110 (a). The property affected by the liens declared invalid by section 67f also passes to the trustee for the benefit of the estate. So does the nonexempt property put up as security or indemnity for the bond.

The question upon which seeming contrariety of opinion exists is whether the nullification can be achieved through a summary order of the bankruptcy court when the property is in custody of a state officer under an attachment or execution levy, in an action by a creditor who contests the existence of one of the four conditions (lien, obtained by legal proceedings, within four months, while debtor insolvent) necessary to render liens invalid under section 67f. Of course, if any of these conditions do not exist, section 67f cannot apply.

There is a group of cases which seemingly hold that the bankruptcy court may issue a summary turnover order to state officers following adjudication, upon a rule to show cause, showing that property of the bankrupt came into their possession as a result of levies under attachment or execution liens, within four months of bankruptcy. See Clarke v. Larremore (1903) 188 U.S. 486, 23 S.Ct. 363, 47 L.Ed. 555; In re Richards (C.C.A.7, 1899) 96 F. 935; Bear v. Chase (C.C.A.4, 1900) 99 F. 920; United Transp. & Lighterage Co. v. New York & Baltimore Transp. Line (D.C.N.Y.1910) 180 F. 902; Staunton v. Wooden (C.C.A. 9, 1910) 179 F. 61; In re Chebot (D.C. Mass.1923) 288 F. 1006; In re O. L. Ward & Co. et al. (D.C.Cal.1917) 242 F. 999; In re Community Stores of Iowa (D.C. Iowa, 1922) 282 F. 328. It is to be noted that (excepting the two decided prior to it) these cases follow Clarke v. Larremore, supra. The rationale of these cases is well stated by Gilbert, Circuit Judge, in Staunton v. Wooden, supra, 179 F. 61, at page 62: "Where the claim of possession as against the trustee's right of possession is based solely on an attachment lien, which is annulled by the adjudication in bankruptcy, the person or officer so in possession holds as bailee for the trustee, and must deliver the property upon proper demand, *and may be required to do so by a summary order issued from the bankruptcy court.* He is not an adverse claimant, and his mere refusal to surrender the property does not make him such." (Italics added.)

Whatever force these cases have has been destroyed by the ruling of the Supreme Court in Taubel-Scott-Kitzmiller Co., Inc., v. Fox (1924) 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770. In that case Mr. Justice Brandeis distinguishes Clarke v. Larremore, supra, on the ground (1) that the attaching creditor made no contention that the "bankrupt was solvent at the time of the levy," and (2) that express consent was given to the jurisdiction of the bankruptcy court. (See footnotes 2 and 24 of the opinion.) Speaking for a unanimous court, he rules that, where *neither the judgment creditor nor the attaching officer appeared in or consented to the adjudication and the creditor does not admit insolvency,* a judicial question is presented which cannot be determined in a summary proceeding, but resort must be had by the trustee to a plenary action. The opinion says:

"A trustee seeking to have declared void, under subdivision 'f' of section 67 [11 U.S.C.A. § 107 (f)], a lien obtained through legal proceedings, and to recover possession of property, may be confronted with an adverse claim upon several grounds. It may be asserted that the lien attacked is of a character different from those provided for in that subdivision; or, although the lien (i. e., that obtained by levy of execution) is clearly one to which subdivision 'f' applies, that it is valid by reason of other facts, for the statute does not, *as a matter of substantive law, declare void every lien obtained through legal proceedings within four months of the filing of the petition in bankruptcy. The lien may be valid, because the debtor was, in fact, solvent at the time the levy was*

*made; or, although the debtor was then insolvent, because the property had passed into the hands of the bona fide purchaser; or, although the debtor was then insolvent and the levy was made within the four months, because inchoate rights by way of lien had been acquired earlier. As the establishment of any one of these facts would bar recovery by the trustee, their assertion presents a judicial question. In this case, since the possession of the sheriff was the possession of the state court, the trustees' claim to the property would, under general principles of law, have to be litigated in the state court.* * * * But Congress *did not,* either by section 2, section 23 of the Bankruptcy Act of 1898 [11 U.S.C.A. §§ 11, 46], or any other provision of the act, confer generally such broad jurisdiction over claims by a trustee against third persons. *Nor has it provided in terms, that a substantial adverse claim to property which is not in the possession of the bankruptcy court, and which is demanded by the trustee under subdivision 'f' of section 67, may be litigated, without consent, by a summary proceeding.* To sustain the judgment under review, a specific grant of power to so deal with such a controversy must be shown." Taubel-Scott-Kitzmiller Co. v. Fox, supra, 264 U.S. 426, at pages 429, 431, 44 S.Ct. 396, 397, 68 L.Ed. 770.

To the argument that the jurisdiction to determine the validity of the lien summarily may be implied from the power of the bankruptcy court to order that the lien, void against the trustee, shall be preserved for the benefit of the estate, the answer is:

"The substantive right of subrogation which the clause confers can come into effect only *after* the invalidity of the lien as against the trustee has been established either by an admission of the holder of the lien or by an adjudication. It is entirely immaterial, so far as concerns the enjoyment of the right of subrogation, in which of these ways the invalidity is established. It is entirely immaterial, whether it is established by an adjudication, whether it be that of a state court, the bankruptcy court, or of the federal District Court sitting at law or equity. *In every case in this court in which this right to subrogation has been exercised (and in most cases in the lower courts), following an adjudication of invalidity made by the bankruptcy court, there had been either consent that jurisdiction be taken for that purpose or there was possession of the res by that court.*

"In this case, the sheriff had, before the filing of the petition in bankruptcy, taken exclusive possession and control of the property, and he had retained such possession and control after adjudication and the appointment of the trustees. *The bankruptcy court, therefore, did not have actual possession of the res. The adverse claim of the judgment creditor was a substantial one.* The bankruptcy court, therefore, did not have constructive possession of the res. Neither the judgment creditor, nor the sheriff, had become a party to the bankruptcy proceedings. There was no consent to the adjudication by the bankruptcy court of the adverse claim. *The objection to the jurisdiction was seasonably made and was insisted upon throughout. The bankruptcy court, therefore, did not acquire jurisdiction over the controversy in summary proceedings. Nor did it otherwise."* Taubel-Scott-Kitzmiller Co. v. Fox, supra, 264 U.S. 426, at pages 436–438, 44 S.Ct. 396, 400, 68 L.Ed. 770. (Italics added.)

Even before this decision certain courts had interpreted the section in similar manner. See Simpson v. Van Etten (C.C.Pa. 1901) 108 F. 199; In re Ann Arbor Machine Co. (D.C.Mich.1922) 278 F. 749. Since it was made, it has been accepted by writers and courts as establishing the proposition that, if the attaching creditor denies the existence of any one of the essential conditions for the nullification of the lien of attachment, *such as insolvency within four months,* he is an adverse claimant entitled to litigate the question in a direct or plenary proceeding, and that a summary proceeding in the bankruptcy court is of no effect. See Remington on Bankruptcy (4th Ed.) § 1906.25; In re Oliver, supra; J. S. & J. F. String v. Birkhahn (C.C.A.3, 1929) 30 F.(2d) 492; In re Jones (D.C. Tex.1930) 42 F.(2d) 269; In re Lincks Wire Forming Co. (C.C.A.7, 1932) 60 F. (2d) 770; Marcell v. Engebretson (C.C. A.8, 1934) 74 F.(2d) 93; In re Shainin & Co., Inc. (D.C.N.Y.1934) 10 F.Supp. 339; Commercial Credit Co. v. Street (C.C.A.9, 1933) 65 F.(2d) 102. If the attaching officer refuses to surrender possession and the attaching creditor raises the issue of the absence of insolvency, the bankruptcy court (subject to the exception to be noted) is powerless by a summary turnover proceeding to dispose of the matter.

That such is the effect of the decision in Taubel-Scott-Kitzmiller Co., Inc., **v.**

Fox, supra, is also indicated by a group of cases which, in interpreting the summary powers as to liens and attachments given to the bankruptcy court under sections 77A and 77B of the Bankruptcy Act (11 U.S. C.A. §§ 206, 207), refer to the case and hold that these powers are greater than those under 67f. See In re 1030 North Dearborn Building Corporation (D.C.Ill. 1935) 9 F.Supp. 972; In re Prudence-Bonds Corporation (C.C.A.2, 1935) 77 F. (2d) 328; Irving Trust Co. v. Fleming (C. C.A.4, 1934) 73 F.(2d) 423; Thomas v. Winslow (D.C.N.Y.1935) 11 F.Supp. 839; Southwestern Lumber Co. of New Jersey v. Kerr (D.C.1934) 11 F.Supp. 252, 253. The decision in Taubel-Scott-Kitzmiller Co., Inc., v. Fox, supra, is binding upon us. And, if the group of cases first cited, including those from our own circuit, establish a contrary rule, they must be considered distinguished or overruled by it.

Upon the facts we cannot distinguish the present case from the Taubel Case. There, as here, the money was held by a state officer under an attachment of a state court levied prior to the adjudication. The officer never surrendered that possession (as was done in Re Lincks Wire Forming Co., supra, and in Re Shainin & Co., Inc., supra). Neither he nor the attaching creditor appeared in the bankruptcy court. And here, as there, the creditor in his answer to the order to show cause denied the existence of insolvency at the time of the levy and challenged the jurisdiction of the bankruptcy court to hear the matter. The only difference in facts is that in the Taubel Case the creditor, besides challenging the jurisdiction of the bankruptcy court, also asked the District Court to stay the proceedings and offered before it what the Supreme Court considers substantial support for its claim that the debtor was solvent at the date of the levy. The method pursued in the Taubel Case, however, is not the exclusive one. The jurisdiction of the court may be challenged in other ways. In Re Oliver, supra, the proceeding was instituted before the District Judge, who refused to entertain it. In J. S. & J. F. String v. Birkhahn (C.C.A.3, 1929) 30 F. (2d) 492, 494, the District Judge made the order. The Circuit Court reversed it upon the ground that there had been neither allegation nor proof of insolvency at the summary hearing. It was held that for the purpose of such a proceeding neither a voluntary nor an involuntary adjudication is sufficient:

"Although the petition in bankruptcy in this case is not in the record, we may assume, because of the subsequent adjudication, that it alleged that the bankrupt was insolvent and, when in that situation, committed an act of bankruptcy; yet, even so, the adjudication *does not* as matter of fact establish the bankrupt's insolvency on the date of the liens even though it was insolvent within four months of the filing of the petition. While it has long been decided that a voluntary adjudication does not conclusively show insolvency of the bankrupt at any time prior thereto, because a voluntary adjudication in its very nature is not dependent upon such insolvency, In Re Ann Arbor Machine Co., supra, there has been a difference of opinion as to whether adjudication in a case of involuntary bankruptcy is conclusive evidence of the bankrupt's insolvency. That question has, however, been set at rest by the Supreme Court in Gratiot County State Bank v. Johnson, 249 U.S. 246, 248, 249, 39 S.Ct. 263, 63 L.Ed. 587, where it held that it is not such evidence. The law of that case leaves the trustee here without either allegation or evidence of the asserted fact that the bankrupt was insolvent on the critical date." J. S. & J. F. String v. Birkhahn, supra, 30 F.(2d) 492, 494, at pages 495, 496. (Italics added.)

In Marcell v. Engebretson, supra, proceedings were had before the District Judge and a summary turnover order made, over the objection to jurisdiction made by trustees appointed by a state court.

It is true that the mere assertion of an adverse claim by an attaching creditor is not sufficient to oust the bankruptcy court from jurisdiction. It may enter into a preliminary inquiry to determine if the claim is substantial or merely colorable. Harrison v. Chamberlin (1926) 271 U.S. 191, 46 S.Ct. 467, 468, 70 L.Ed. 897; Marcell v. Engebretson, supra; In re Jones, supra; Chandler v. Perry (C.C.A.5, 1934) 74 F.(2d) 371.

In Harrison v. Chamberlin, supra, the Supreme Court reasserted the doctrine declared in Taubel-Scott-Kitzmiller Co., Inc., v. Fox, supra, that a court of bankruptcy "is without jurisdiction to adjudicate in a summary proceeding a controversy in reference to property held adversely to the

bankrupt estate, without the consent of the adverse claimant; but resort must be had by the trustee to a plenary suit." It then held, in effect, that, where the claimant's contention discloses a contested matter of right, involving fair doubt and reasonable room for controversy in matters either of fact or law, the claim is substantial and its merits can only be adjudged in a plenary suit. It is interesting to note that there the petition for a summary order was filed before the District Court. The claimant filed a demurrer for want of jurisdiction, which was overruled. She then answered, asserting that the property was hers, and renewed the jurisdictional objection. The matter was then referred to the referee for findings. He reported, upon the evidence, that the claimant's claim was based on fraud and merely colorable, and that the money was an asset of the estate and subject to the summary jurisdiction of the court. The District Court confirmed the report and entered a decree in accordance with it. The claimant appealed to the Circuit Court which reversed the order of the District Court, upon the ground that the claim was adverse and not merely colorable. In sustaining the Circuit Court, the Supreme Court laid down the rule just summarized as to when a claim may be said to be colorable. So doing, it used the following language:

"Without entering upon a discussion of various cases in the Circuit Courts of Appeals in which divergent views have been expressed as to the test to be applied in determining whether an adverse claim is substantial or merely colorable, we are of opinion that it is to be deemed of a substantial character when the claimant's content *discloses a contested matter of right, involving some fair doubt and reasonable room for controversy,*' Board of Education v. Leary, supra [236 F. 521] 527 (149 C.C.A.573) *in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense.* Compare Binderup v. Pathe Exchange, 263 U.S. 291, 295, 44 S.Ct. 96, 68 L.Ed. 308; and Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L. Ed. 750 [45 A.L.R. 1370].

"In the present case it clearly appears that the validity of the respondent's claim *depended upon disputed facts,* as to which there was a conflict of evidence, as well as a controversy in matter of law. Its determination involved 'fair doubt and reasonable room for controversy' both as to fact and law. It was therefore substantial, and not merely colorable; and its merits could only be adjudged in a plenary suit.

"As *the respondent's objection to the summary jurisdiction of the bankruptcy court was well taken, and there was no waiver of her right in this respect,* Galbraith v. Vallely, supra [256 U.S. 46], 50 [41 S.Ct. 415, 65 L.Ed. 823] *the decree of the* Circuit Court of Appeals is Affirmed." Harrison v. Chamberlin, supra, 271 U.S. 191, at pages 194, 195, 46 S.Ct. 467, 469, 70 L.Ed. 897. (Italics added.)

This decision means then (1) that the objection to jurisdiction must be raised, and (2) that, when it is raised, the only authority the bankruptcy court has is to conduct a preliminary inquiry to determine whether the claim is substantial or merely a pretense. This it must do upon evidence presented. And, if the evidence is such that it discloses reasonable ground for controversy either as to a matter of fact or a matter of law, the bankruptcy court is without power to determine the matter, but resort must then be had to a plenary action. See, Schumacher v. Beeler (1934) 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433.

■ The order of the referee in the instant case does not show what evidence was taken before him. No summary of it appears in the certificate. There is *no* finding that, *at the time of the levy of the attachment,* the debtor was insolvent. The order merely declares the attachment void as against the trustee and states the referee's legal conclusions upon the title to the property. Nor is there any finding (as was the case in Harrison v. Chamberlin, supra) that the claim of the attaching creditor is merely colorable. Such a finding is necessary in view of the fact that, on review, we have the right to review the legal sufficiency of the facts upon which it was based. Harrison v. Chamberlin, supra. The making of such findings is the more important in this case because of the fact that the municipal court on February 25, 1936, made its order ordering the marshal to release to the attaching creditor sufficient money to satisfy the judgment, and the attaching creditor in his answer, filed March 9, 1936, had pleaded the final adjudication of the matter in the municipal

court as res judicata. In view of these considerations, the mere assertion of insolvency in the petition and the referee's finding of the trustee's right to the property cannot take the place of the necessary finding that insolvency actually existed. More, the trustee's petition, while alleging insolvency, contains no allegation concerning the unsubstantiality or colorability of the claim of the attaching creditor. Assuming, however, that, under its general allegations, the referee could proceed to determine that question, we have no finding on it. The absence of such a finding and of a finding that insolvency existed at the time of the levy is fatal to the order, even if we consider the summary proceeding as merely a preliminary inquiry to determine if the claim is colorable. And, the invalidity appearing upon the face of the referee's certificate on the petition for review, the usual presumption in favor of the validity of a referee's orders when the certificate does not contain a summary of the evidence does not avail to save the order. See In re Runnymede Finance Co. (C.C.A.9, 1933) 64 F.(2d) 169; Gilbert's Collier on Bankruptcy (3d Ed.) § 871, p. 638; Remington on Bankruptcy (4th Ed.) vol. 8, § 3663, p. 35. And, the attaching creditor having made timely objection to the jurisdiction of the bankruptcy court, without avail, he is entitled to urge the objection on review.

The importance of the questions involved and the desire to clarify in my own mind what seemed an apparent conflict in the decisions upon the subject have led to an extended discussion from which the conclusion follows that the order of the referee is without jurisdiction and should be reversed. It is so ordered.