### BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N v. CUCCIA.
#### No. 8187.

Circuit Court of Appeals, Ninth Circuit.
Dec. 30, 1937.

For former opinion, see 90 F.2d 100.

Louis Ferrari, of San Francisco, Cal., and Edmund Nelson and Hugo A. Steinmeyer, both of Los Angeles, Cal., for appellant.

Paul Leiter, of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

At the former hearing, counsel did not discuss the question whether the orders sought to be reviewed were orders made in a controversy arising in bankruptcy, within the meaning of section 24a of the Bankruptcy Act, as amended, 11 U.S.C.A. § 47 (a), or were orders made in a proceeding in bankruptcy, within the meaning of section 24b of the act, as amended, 11 U.S.C.A. § 47 (b). The question was before us and had to be decided. We held, 9 Cir., 90 F.2d 100, 102, that the orders were made in a proceeding, not in a controversy, and that, therefore, they were not appealable under section 24a. By its petition for rehearing, appellant challenged the correctness of our ruling. Desiring argument on the question, we granted a rehearing.

As heretofore stated, 90 F.2d 100, 101, the proceeding commenced by appellee on August 4, 1934, was dismissed on October 14, 1935. Thereafter, on October 17, 1935, appellant purchased at foreclosure sale a tract of land which appellee had, prior to August 4, 1934, conveyed to a trustee, in trust, to secure payment of a promissory note, held by appellant, for $11,850, with interest. 90 F.2d 100, 101, footnote 3. See, also, Bank of America National Trust & Savings Ass'n v. Adair, 9 Cir., 90 F.2d 750, 751. After the proceeds of the sale were credited on appellee's note, there still remained an unpaid balance of $4,934.68. 90 F.2d 750, 752.

Notwithstanding appellant's purchase of the above-mentioned land, appellee continued in possession thereof. To obtain possession, appellant on October 30, 1935, commenced an action in a state court of California, which on December 2, 1935, entered its judgment, ordering and adjudging that appellee was guilty of unlawful detainer, that appellant be "restored" to possession of the land, and that execution issue as provided by law. Execution did issue, but nothing came of it. Appellee remained and still remains in possession of the land.

Appellee's petition asking leave to file a new petition under section 75 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203, was filed on March 16, 1936. It stated, in substance, that, since the foreclosure sale above referred to, appellee had discovered "new facts" which he believed would justify the court in granting him leave to file a new petition under section 75; namely, that the Federal Land Bank of Berkeley would lend him $7,500 on the above-mentioned land; that appellant had received for a right of way through the land approximately $3,000, and for crops raised on it in 1935 approximately $1,600; that appellee was entitled to both sums so received by appellant; that, if permitted to file a new petition, appellee would be in a position to make his creditors, including appellant, a composition offer of approximately 99 per cent. of the total indebtedness then or theretofore owing by appellee, including what he owed appellant before, as well as after, the foreclosure sale; that appellee was informed and believed that such composition offer would be satisfactory to his creditors, including appellant, but that appellant had obtained a judgment—meaning, evidently, the state court judgment above referred to—authorizing appellant to dispossess appellee and remove him from the land on March 16, 1936; that appellee's new petition, if permitted to be filed, could not be heard before April 6, 1936; and that, unless, pending such hearing, appellee was granted relief from the effect of the judgment, his composition offer would be of no avail, and he would suffer great and irreparable injury.

The petition prayed:

"(1)  That the Court make its order granting [appellee] leave to file a new petition under section 75 of the Bankruptcy Act and that a meeting of the creditors be held and hearing had to determine whether or not said composition as offered is acceptable.

"(2)  That until the time when such hearing under said petition may be had [appellant] * * * and the Sheriff of San Bernardino County * * * be ordered and restrain[ed] and forbidden from interfering with the possession of said [land] * * *, and that no further proceedings shall be taken to dispossess your petitioner from his land."

Thereupon, on March 16, 1936, the District Court made an ex parte order reading as follows:

"Upon reading and filing of the verified petition of [appellee], and it appearing to the satisfaction of the Court from said petition that [appellee] has discovered new facts, and

"It further appearing to the Court that [appellee] is in possession to effect a satisfactory composition with his creditors, and

"It further appearing to the Court that unless a restraining order is granted as prayed for in said petition, [appellee] will suffer great and irreparable injury before the matter set out in the petition can be heard,

"It is therefore ordered and allowed that [appellee] file new petition under section 75 of the Bankruptcy Act, and that pending the hearing of said petition, [appellant] * * * and the Sheriff of San Bernardino County * * * are hereby restrained from interfering with [appellee's] possession of said [land] * * *, and they are further enjoined and restrained from dispossessing and or evicting [appellee] until such time as the Court shall make its further order in the premises."

■  Although it contained the word "enjoined," this order, obviously, was not an injunction, nor was it an order granting an injunction, permanent or interlocutory. It was a temporary restraining order, incidental to and constituting part of an order reinstating—or, as appellant contends, granting leave to commence—a proceeding in bankruptcy. Whether this was a reinstatement of an old proceeding or the commencement of a new one is immaterial.

Appellee's new petition was filed on March 16, 1936.  It stated that appellee was engaged primarily in farming operations, that he was insolvent or unable to meet his debts as they matured, and that he desired to effect a composition under section 75 of the Bankruptcy Act, as amended.  It is apparent, however, from both petitions—the new petition and the petition asking leave to file it—that what appellee sought was not merely a composition of his then existing debts, but a reconveyance of the land which appellant had purchased at foreclosure sale. This he proposed to effect, not by compulsion, or as a matter of right, but by negotiation.  He did not in either of his petitions question appellant's title to the land or its right to immediate possession thereof, nor did he claim that he himself had any such right or title.  What he asked was that his admittedly unlawful possession be not interfered with until it could be determined whether his creditors, including appellant, would or would not accept his proposal.

Appellant's motion to vacate the restraining order was filed on March 25, 1936.  It stated that appellant was and had been since October 17, 1935, the owner and entitled to possession of the above-mentioned land; that it had obtained the state court judgment above referred to; that the land was planted to grape vines, which required cultivation, pruning, and care; and that, unless appellant was able to secure possession of the land, the vines would deteriorate, and appellant would suffer loss by reason thereof.  Whether such loss would occur before appellee's new petition could be heard or his composition proposal submitted, the motion did not state; nor did it state whether appellant would or would not accept a composition proposal.

The motion to vacate the restraining order was heard and denied, without prejudice, on March 30, 1936.  The District Judge, in denying the motion, stated from the bench:

"Here is an obligee [appellant] * * * that, according to the representations made, is willing to further negotiate with the debtor [appellee] to settle this claim. * * * It is further represented that, if a reasonable opportunity could be given, it is felt that [appellant] would be willing to reconsider the adjustment of its debt and, in lieu of taking the property on foreclosure, would reopen negotiations to settle the debt by composition or compromise or extension, by some other method than forfeiture of the

property. * * * If those representations are true, there is no inequity in permitting [appellee and appellant] to further negotiate. * * * It is represented here that, if it is given until the 6th of 'April, there will be a definite statement as to whether or not it is going to accede to a renewed application to adjust· this debt. * * *

"Under those circumstances, gentlemen, I am going to give you the same opportunity that the court indicated last week it was going to give. And, if at that time [April 6, 1936] it appears that it is an impossibility, * * * that [appellant] stands upon its property right and is resolute, fixed and determined,'and that it is not in any attitude of mind where it will compose the debt or agree to anything, that would present an entirely different situation than is now presented.

"The motion to dissolve restraining order is denied without prejudice."

Appellee never availed himself of the "opportunity" which the trial court offered him. He never negotiated or attempted to negotiate with appellant. He never submitted any composition or other proposal. His new petition was never heard or presented for hearing. If, at any time after April ·6, 1936, appellant had renewed its motion to vacate the restraining order, or had moved the court to dismiss the entire proceeding, such motion would undoubtedly have been granted; but appellant did not follow ·that obviously proper course. Instead, it .applied for and obtained from the District ·Court, on April 8, 1936, an order purporting to allow an appeal from the restraining ·order and from the order denying, without prejudice, its motion to vacate the restraining order.

It must be and is conceded by appellant that this appeal was not taken under or ·in conformity with section 24b of the Bankruptcy Act; that, unless the orders appealed from were orders made in a controversy .arising in bankruptcy, they were not appealable under section 24a of the act; and that, unless they were appealable under section 24a, this appeal should be dismissed. Appellant contends, however, that these orders were made in a controversy arising in ·bankruptcy and were, therefore, appealable under section 24a. In support of its contention, appellant cites Taylor v. Voss, 271 U.S. 176, 46 S.Ct. 461, 70 L.Ed. 889; Hirschfeld v. McKinley, 9 Cir., 78 F.2d 124; Irving Trust Co. v. Fleming, 4 Cir., 73 F.2d 423; Marcell v. Engebretson, 8 Cir., 74 F. 2d 93; In re Lowmon, 7 Cir., 79 F.2d 887, and In re Tracy, 7 Cir., 80 F.2d 9.

These cases are not in point. Taylor v. Voss was a controversy between a trustee in bankruptcy and the testamentary trustee of the bankrupt's deceased wife concerning the title to real estate to which the trustee in bankruptcy and the testamentary trustee made conflicting claims. There was no appeal, but a petition to revise. The order sought to be revised was an order sustaining the claim of the testamentary trustee.

Hirschfeld v. McKinley was a controversy between the trustee in bankruptcy of a corporation and a subscriber to the corporation's capital stock, as to whether the subscriber should be assessed for and required to pay to the trustee the unpaid balance of his stock ·subscription. The appeal was from an order directing such assessment.

Irving Trust Co. v. Fleming was a controversy between a trustee in bankruptcy and receivers appointed by a state court, as to whether the receivers should turn over to the trustee property alleged to belong to the bankrupt estate. The appeal was from an order dismissing the trustee's petition for such turnover.

Marcell v. Engebretson was a controversy between a trustee in bankruptcy and trustees appointed by a state court, as to whether the trustees appointed by the state court should turn over to the trustee in bankruptcy property alleged to belong to the bankrupt estate. The appeal was from an order requiring such turnover.

In re Lowmon was a controversy between a mortgagor who, being a farmer, had filed a petition under section 75 of the Bankruptcy Act, and a mortgagee who had purchased the mortgaged property at foreclosure sale, as to whether the sheriff who had made the sale should be permitted to deliver a deed to the purchaser. The appeal was from an order enjoining the sheriff from making such delivery.

In re Tracy was a controversy between a farmer who had contracted to purchase land and thereafter had filed a petition under section 75, and the vendor under the contract, as to whether the vendor should be permitted to forfeit the contract because of the purchaser's default. The appeal was from an order restraining the vendor from declaring such forfeiture.

The situation in this case is not comparable to that in any of the cases cited by appellant. There was here no claim by either party of any right or title claimed by the other party. The only issue between appellant and appellee was whether or not enforcement of appellant's admitted right of possession should be postponed for a few days, to permit submission and acceptance or rejection of a composition proposal in a proceeding under section 75 of the Bankruptcy Act. The orders effecting such postponement were, in our opinion, orders made in a proceeding in bankruptcy, not in a controversy arising in bankruptcy. We hold, therefore, as we did before, that the orders were not appealable under section 24a.

■ Even though it were held that these were orders made in a controversy arising in bankruptcy, they still would not be appealable under section 24a. That section does not authorize appeals from all orders made in controversies arising in bankruptcy, but only from such orders as would be appealable if made "in other cases"; that is to say, in cases other than bankruptcy cases. Moody & Son v. Century Savings Bank, 239 U.S. 374, 377, 36 S.Ct. 111, 60 L.Ed. 336; Childs v. Ultramares Corp., 2 Cir., 40 F.2d 474, 478. Our jurisdiction in other cases is prescribed by sections 128 and 129 of the Judicial Code, as amended,[1] 28 U.S. C.A. §§ 225, 227. Section 128 empowers us to review by appeal final decisions of the District Courts not directly reviewable by the Supreme Court. There was no final decision in this case.

Section 129 provides that an appeal may be taken from an interlocutory order or decree which, upon a hearing in a District Court, grants or refuses to modify an injunction. There was no such order or decree in this case. There was a temporary restraining order and an order refusing to vacate it, but such orders are not appealable under section 129. Pack v. Carter, 9 Cir., 223 F. 638, 640; Pressed Steel Car Co. v. Chicago & Alton R. Co., 7 Cir., 192 F. 517, 519. They are, therefore, not appealable under section 24a.

Whether, if allowed by this court, an appeal may be taken under section 24b from an order which, though made in a controversy arising in bankruptcy, is not appealable under section 24a,[2] we need not and do not decide. Since in this case no appeal was allowed by this court, that question does not arise.

Appeal dismissed.

---

[1] The statement in our former opinion, 90 F.2d 100, 101, that "Sections 128 (b) and 129 have no application to bankruptcy proceedings," is inaccurate. The statement is true as to proceedings in bankruptcy, but not as to controversies arising in bankruptcy.

[2] See Taylor v. Voss, supra, 271 U.S. 176, at pages 183-187, 46 S.Ct. 461, 464, 465, 70 L.Ed. 889; Great Western Stage Equipment Co. v. Ilcs, 10 Cir., 70 F.2d 197, 199; Childs v. Ultramares Corp., supra.