**In re FREITAS.**

No. 27520–Y.

District Court, S. D. California, Central Division.

Oct. 12, 1936.

Earl E. Moss and Spencer Austrian, both of Los Angeles, Cal., for petitioner.

Charles J. Katz and Alfred Gitelson, both of Los Angeles, Cal., for trustee.

YANKWICH, District Judge.

On March 7, 1936, a creditors' petition in involuntary bankruptcy was filed against Alfred De Freitas doing business under the name of Club Seville, a night club conducted upon property located at 8433 Sunset boulevard in Los Angeles, Cal. Coincident with the filing of this petition, there was filed a petition asking for the appointment of a receiver-custodian. The alleged bankrupt consenting to the making of the order, E. A. Lynch was appointed receiver-custodian and qualified on the same day. An adjudication was made on March 30, 1936. E. A. Lynch later became the trustee. Schedules filed on April 10, 1936, showed assets in the sum of $5,582.13, and liabilities in the sum of $55,802.67.

On April 30, 1936, the referee in bankruptcy, upon the verified petition of the trustee, issued an order to show cause requiring Frances De Freitas, the wife of the bankrupt (to whom, for brevity, we shall refer as the wife), to appear and show cause why the title of trustee to the real property in Los Angeles, and its appurtenances, and upon which the business of the bankrupt was conducted, should not be quieted. The wife made no written answer to the order to show cause. She appeared on the day of the return, May 21, 1936, and objected, orally, to the jurisdiction of the referee to hear the matter. The objection being overruled, the referee proceeded to take testimony. On May 29, 1936, he made his order declaring that the wife had no right, title, or interest in the property or the building, appurtenances and improvements thereon, and that her claims in that respect are void as against the trustee, whose title the order quieted.

The wife seeks to review this order.

Two questions are involved.

The first refers to the power of the referee to determine summarily the question of title. That power is questioned.

■ The law on the subject may be summed up as follows: When the property is not *actually* in the possession of the bankrupt, and persons having such possession assert title to it, adversely, the bankruptcy court (or the referee) cannot by summary process determine the rights so asserted. Resort must be had to a plenary action. See In re Club New Yorker (D.C.1936) 14 F.Supp. 694, 30 A.B.R.(N.S.) 650. When, however, the property is in the *actual or constructive possession of the bankrupt,* the bankruptcy court has the power to determine the title.

This power is dependent upon one fact only, *possession by the bankrupt,* no matter in what capacity he holds it. Of course,

the capacity in which he holds it may, ultimately, affect the extent of the right he has in the property. It does not, however, affect the right of the bankruptcy court to make the inquiry summarily.

These principles are beyond dispute. The following may be cited, as among the leading authorities, supporting them: 5 Remington on Bankruptcy (4th Ed.) § 2382, p. 482; Gilbert's Collier on Bankruptcy (3rd Ed.) § 699; Whitney v. Wenman (1905) 198 U.S. 539, 25 S.Ct. 778, 49 L. Ed. 1157; Murphy v. John Hofman Company (1908) 211 U.S. 562, 29 S.Ct. 154, 53 L.Ed. 327; Hebert v. Crawford (1913) 228 U.S. 204, 33 S.Ct. 484, 57 L.Ed. 800; Page v. Arkansas Natural Gas Corporation (1932) 286 U.S. 269, 52 S.Ct. 507, 76 L.Ed. 1096; Schumacher v. Beeler (1934) 293 U. S. 367, 55 S.Ct. 230, 79 L.Ed. 433; Commercial Credit Co. v. Street (C.C.A.9, 1933) 65 F.(2d) 102; Buss v. Long Island Storage Warehouse Co. (C.C.A.2, 1933) 64 F. (2d) 338; Marcell v. Engebretson (C.C.A. 8, 1934) 74 F.(2d) 93; Chandler v. Perry (C.C.A.5, 1934) 74 F.(2d) 371. It is clear that the bankrupt here had possession which he surrendered to the receiver, who later became trustee. The receiver took over the property from the city marshal, who had a keeper on it under an attachment. The surrender was *voluntary,* and, *without objection,* from the attaching creditor, or from the wife. The referee had, therefore, the right to determine, by summary process, the assertion of the claim of the bankrupt's wife to the property which was in the trustee's possession. See Taubel-Scott-Kitzmiller Co., Inc. v. Fox (1924) 264 U. S. 426, 44 S.Ct. 396, 68 L.Ed. 770.

The validity of this claim is the second question arising upon this review. Briefly, the basis asserted for the claim is: The real property stood in the wife's name, pursuant to an alleged oral agreement entered into at the time of her marriage to the bankrupt, whereby it was agreed that her earnings should remain her separate property. The money with which the property was purchased was claimed to be the wife's. The improvements upon the building on the property were made by the husband at a cost of many thousands of dollars. The husband claims to have expended $5,000 in cash. And some of the bills are still unpaid and listed in the schedules. He claimed that he had agreed to pay rent to his wife during the occupancy, and that his possession of the property was merely that of her lessee.

The referee determined the matter by holding that the property so claimed by the wife as her separate property, was, in fact, the community property of herself and the bankrupt.

Under the law of California, all property owned by either husband or wife before marriage and that acquired afterwards either by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is separate property. California Civil Code, §§ 162, 163. All other property acquired after the marriage by either husband or wife which would not have been the separate property of either is community property. However, whenever property, real or personal, or an interest in it is acquired by a married woman by an instrument in writing, the presumption is that it is her separate property. California Civil Code, § 164, as amended by St.1935, p. 1912. Courts have been very liberal in applying the presumption so declared. See Kimbro v. Kimbro (1926) 199 Cal. 344, 249 P. 180.

Husband and wife may change their legal relations as to property. To that end, each may convey to the other all title and interest in either separate or community property. The mutual consent of the spouses is sufficient consideration for such an agreement. California Civil Code, §§ 158–161. In this manner the character of property, whether separate or community, may be changed instantly, upon the entering into such agreement.

In determining whether that was done in a particular case, consideration is given to the fact that the community property may stand in the name of either spouse. The circumstances under which the property was acquired and the facts surrounding such acquisition are, in such cases, more important than the fact that one or the other spouse may have been named as the holder of the property. See Killian v. Killian (1909) 10 Cal.App. 312, 101 P. 806; In re Estate of Wahlefeld (1930) 105 Cal. App. 770, 288 P. 870; In re Estate of Sill (1932) 121 Cal.App. 202, 9 P.(2d) 243; Kenney v. Kenney (1934) 220 Cal. 134, 30 P.(2d) 398. And the presumption in favor of the wife as to real property standing in her name may be overcome by evidence, *direct or circumstantial,* showing that, in reality, there was no intention to vest the property in her as her separate property,

but that, on the contrary, by so doing, the intention was merely to have her hold the property in her own name for the benefit of the marriage community. As to money deposited in a bank by husband or wife, after marriage, the presumption is that it is community property. Fennell v. Drinkhouse (1901) 131 Cal. 447, 63 P. 734, 82 Am.St. Rep. 361; In re Estate of Pepper (1910) 158 Cal. 619, 112 P. 62, 31 L.R.A.(N.S.) 1092; Blair v. Roth (C.C.A.9, 1927) 22 F. (2d) 932. A like presumption applies to *all* personal property acquired after marriage, no matter in whose name the title stands. See Hammond v. McCollough (1911) 159 Cal. 639, 115 P. 216; Stafford v. Martinoni (1923) 192 Cal. 724, 221 P. 919; McAlvay v. Consumers' Salt Co. (1931) 112 Cal.App. 383, 297 P. 135. Ultimately, as to any kind of property, the facts and circumstances in each case must determine the intention of the parties.

When the question arises after the death of one of the spouses, the declarations of the parties *may be* determinative. Especially where the right is asserted by the heirs of the deceased against the surviving spouse, and *no rights* of creditors or third parties intervene. See Potter v. Smith (1920) 48 Cal.App. 162, 191 P. 1023. But at all times, the statutory provision amounts to nothing more than a disputable presumption. It may be overcome by evidence, *direct or indirect*. Potter v. Smith, supra; Cohn v. Smith (1918) 37 Cal.App. 764, 174 P. 682; Goucher v. Goucher (1927) 82 Cal.App. 449, 255 P. 892; Jansen v. Jansen (1932) ·127 Cal.App. 294, 15 P. (2d) 777.

However, where the rights of third parties are involved, where, as here, after bankruptcy, it is attempted to claim on behalf of the wife property upon which a business was carried on by the husband— property upon which the husband, according to his own admission, has spent thousands of dollars in improvements—and the assertion is made against creditors who parted with goods and services which went into the improvement of the property now claimed by the wife, and the conduct of the business on it, even the most ·emphatic declarations of the spouses themselves will not be sufficient, if circumstances show *no* assertion of such right prior to the bankruptcy or go counter to it.

The ipse dixit of the parties in such cases, even if not contradicted by their own actions, means very little. After all, courts are not compelled to accept the verbal statement of a person as to his intention, when, *from his own actions,* a contrary one appears or may be inferred. In such instances, the rule established by such cases as Thomas v. Hoffman (1932) 122 Cal.App. 213, 9 P.(2d) 538; In re Henderson's Estate (1932) 128 Cal.App. 397, 17 P.(2d) 786, requiring a definite agreement changing the character of community property applies. Very apposite to the facts here are the words of the court, *as to a kindred situation,* in Cohn v. Smith (1918) 37 Cal. App. 764, 174 P. 682, at page 683: "The lots, having been acquired in the name of Fannie Cohn, were presumptively her separate property, but this was not a conclusive presumption. The court was entitled to receive and consider *any* competent evidence which tended to disclose the *manner of acquisition of the property,* and *from the acts and conduct of the husband determine whether the transaction whereby the property was conveyed to the plaintiff's wife constituted a gift to her.* Killian v. Killian, 10 Cal.App. 312, 101 P. 806." (Italics added.) There the wife attempted to escape liability, under the lien law, for labor and materials. But there, as here, the court pragmatically declined to sacrifice realities to mere presumptions.

It should be added that at no time did the bankrupt's wife file a notice of nonresponsibility, which would have relieved the property of liens on account of the improvements made by him. California Code of Civil Procedure, § 1192. This fact, in itself, is inconsistent with the present claim of ownership by the wife. So is also the listing of the property at a value of $21,000 in a joint financial and credit statement to a bank ·on August 5; 1935, and in another one to the same bank, at a value of $30,000 on December 2, 1935, after the improvements had been made, *both signed by husband and wife.*

As this opinion is merely intended to indicate, in a general way, the basis for the conclusion reached, it will not be necessary to review, in great detail, the testimony in the record.

The referee made no findings. However, his conclusion as to the ownership is definitely stated in the order ·made and in the certificate. Even without resorting to the well-known rule that the findings of a referee upon controverted questions are

entitled to great weight and will not ordinarily be disturbed upon review [Weisstein Bros. & Survol v. Laugharn (C.C.A.9, 1936) 84 F.(2d) 419], we are satisfied, after reading the transcript of the testimony, and examining the exhibits, that the conclusion reached by the referee that the property was community property is correct.

The parties have been married fourteen years. The property in question was acquired in August, 1935. The agreement alleged to have been had at the time of the marriage as to the manner in which the earnings of the wife were to be held was contained in the testimony of the two spouses. Rather than summarize the testimony, we give it here in two of the versions (there are several) in which it appears in the record. The bankrupt testified:

"Q. (By Mr. Katz) And at the time you married Mrs. De Freitas what business were you in, Mr. De Freitas? A. At the time I was married to her I was working in pictures.

"Q. And what was then Miss Barger's business? A. She was working too.

"Q. Do you remember how much money both of you had when you got married? A. I had about $4.00 or $5.00.

"Q. What did she have? A. She had about, oh, I don't know, she had about 12 or 14 hundred dollars.

"Q. And after the first year of your marriage, then Mrs. De Freitas continued to work? A. Yes, all the time.

"Q. And did you go into business shortly after the marriage? A. On and off, different ventures.

"Q. Do you remember if anyone ever left Mrs. De Freitas an estate of any considerable size? A. No.

"Q. Of you own knowledge she has never acquired any property by devise or bequest through the will of any deceased person? A. No.

"Q. *Whatever she has is the result of the fact that she has worked during the time you and she were living together, is that right?* A. Yes.

"Q. *And whatever you had prior to bankruptcy was the result of your business ventures after your marriage to Mrs. De Freitas?* A. *Yes, sir.* We had a mutual agreement between both of us—

"Q. (Interrupting) Did you have that in writing? A. A wife and husband don't have to have anything in writing.

"Q. Just tell me whether you had an agreement in writing about it. A. No.

"The Referee: You say you had a mutual agreement, what? A. We had that agreement that whatever each earned was his personal property. She says, '*I have been used to working and I want to keep on working, and if I need anything, I want to buy it without coming and asking you.*'

"Q. (By Mr. Katz) You state that she stated that if she needed anything and wanted to buy it, she wanted to buy it herself? A. She said if she needed anything she wanted to buy it herself." (Italics added.)

The version given by the wife was:

"Q. Now, when you first married Mr. De Freitas I believe you testified the other day that you had some sort of arrangement with him about your earnings; is that correct? A. Yes, sir, when I first married Mr. De Freitas I had worked, and been independent and did what I wanted *with my own money, and I told him that I wanted to keep on working,* that what money I had I wanted it to be mine, and to have as my own, and to do what I wanted with it.

"Q. What did he say? A. Why, he agreed that that was perfectly all right, that my own earnings would be my own." (Italics added.)

Agreements between husband and wife relating to their property do not require any particular formality. See Estate of Sill, supra. Nevertheless, where rights are asserted to valuable real estate and improvements, upon the basis of an oral understanding had many years before, the requirement of certainty declared by the cases cited becomes all-important. See Hammond v. McCollough, supra. Giving these statements their full effect, they fall far short of complying with the requirement of certainty which is of the essence of each contract. They certainly do not reveal an understanding that any property that the wife might acquire with these funds was to be her separate property. Nor do they reveal an intention that the moneys given to her by the husband out of his earnings should likewise remain her separate property. More, even if it might be implied from this and other statements that there was such understand-

ing, there is no showing that there was *any* understanding that *money* which the husband contributed to the improvement of property they owned or money derived from admittedly community property sources, such as rents from other property they owned, should remain the wife's separate property, or that the property which the money from these community sources helped purchase should remain her separate property.

The negotiations for the acquisition of the property involved were conducted by the bankrupt, although the title was taken in the wife's name. Even assuming that it was the intention of the parties, at the time of the marriage, to keep the earnings of the wife and the property acquired with them as her separate property, there is, throughout the record, such clear evidence of their commingling with funds of community origin, derived from the earnings and speculations of the husband, as to show a clear intent to abandon the original intention. When such commingling is shown to exist, the entire property becomes community property, unless the separate property can be traced definitely. As said in Dimmick v. Dimmick (1892) 95 Cal. 323, 328, 30 P. 547, at page 548: "In order that property may maintain its status as separate property, it is not necessary that it should be preserved in specie or in kind; yet, *when it has undergone mutations and assumed other conditions, it is absolutely necessary, in order to maintain its character as separate property, that it be clearly traced and located."* (Italics added.) And when such commingling ·is shown to exist, the burden is upon the person claiming property as separate property to establish clearly its character as such. See Reid v. Reid (1896) 112 Cal. 274, 44'P. 564; Maskuns v. Maskuns (1928) 93 Cal.App. 27, 268 P. 1093; Fountain v. Maxim (1930) 210 Cal. 48, 290 P. 576.

That burden has *not* been met. The separate funds *have not* been traced or identified.

The presumption contained in section 164 of the California Civil Code may be overcome by evidence, *direct or indirect,* showing an intention contrary to it. And this applies even to cases where the deed to the wife specifically states that the grant is hers as her separate property. See Fanning v. Green (1909) 156 Cal. 279, 104 P. 308; Durrell v. Bacon (1934) 138 Cal. App. 396, 32 P.(2d) 644.

Some of the cases in which these principles have arisen involve controversies between husband and wife. They apply with even greater force when the rights of third parties are involved, when it is attempted, upon the basis of oral testimony upon the part of the spouses, to impress the character of separate property upon property upon which the husband has conducted a business, property which was acquired for the very purpose of such business, and to the acquisition and improvement of which thousands· of dollars of admittedly community funds were contributed. Add to this the manner in which the business was conducted upon the place, the fact that the alleged relation between husband and wife as lessor and lessee and the alleged agreement to pay a rental were, like the original agreement, oral, and *were not* set up on the books of the bankrupt, even though the books were put in by an accounting firm, and that no assertion of the ownership of the property by the wife was made to the receiver at the time he took possession of the property, as well as the fact that large sums of money in the accounts of the wife were not traced directly either to her earnings or to any other definite outside source and the undisputed proof as to moneys from community sources going into the wife's accounts, and there is ample warrant for the conclusion that she was holding the property in her own name merely as a matter of convenience, and that it was community property. There is warrant for the conclusion that the assertion of the wife's ownership, after bankruptcy, is an attempt to project back into the past an intention recently formed and which had no factual basis.

The facts relating to the alleged relation of the husband and wife as lessor and lessee lend support to these conclusions. No rent was ever paid. The wife, as the owner of the property, *did not* dispute the possession of the receiver and assert her right to possession as such owner, or demand that she be put in possession. The very amount of the agreed rental is in dispute. The bankrupt says that he agreed to pay her $500, the rent to begin after he started the enterprise. The wife is not certain as to the amount. She says it may have been $250 or $500. The husband claims that the $5,000 spent on improvements upon the property was to be taken out as rent. But the wife admits that there was *no definite* agreement to that effect. In the

books of the bankrupt, the wife is *not* credited with that amount, nor is she charged with the rentals.

Evidently at the time the bankrupt filed his schedules *he did not think* that the rental was to be deducted from the amounts he had already spent, for he listed his wife as a creditor for rental at the rate of $500 per month for the months of January, February, and March, 1936, or a total of $1,500. Facts like these clearly negative the prima facie presumption arising from the manner in which the title stood.

In truth, all the facts in the case make the referee's conclusion inescapable. The circumstances surrounding the married life of the parties up to the present time, the attempts to account for large sums of money that went through the wife's account through gifts by an unnamed "Christmas Eve gambling partner" and large earnings as an extra, *even in the cold record,* speak of an unconvincing attempt to explain away proven facts and reasonable inferences which the facts almost command to be drawn therefrom, so as to save a valuable piece of community property from the penalties of bankruptcy.

The very idea of a husband spending thousands of dollars in establishing a business and in making improvements upon property belonging to the wife whose sole business experience consisted in her being, before marriage, a check girl, and, afterwards, an extra, and agreeing to pay her rent, even without the facts already alluded to, which show it to be unfounded, would be enough to tax human credulity.

So inconsistent are these and other acts in the record with the idea of a definite understanding for the transmutation of community property into separate property that had the referee taken the ipse dixit of the spouses instead of heeding the eloquence of their acts, which contradict them, we would have been compelled to set aside such a finding as unsupported by the evidence.

When to this we add the impressions that the referee must have gathered from the manner in which the two spouses testified, and their reactions to the contradictions in which they were repeatedly caught, we are compelled to say that no other conclusion was possible.

The order of the referee is affirmed. Findings and order accordingly. Exception to the respondent.