**MANUFACTURERS LIFE INS. CO. v. MOORE et al.**

**No. 14770.**

United States District Court
S. D. California, Central Division.

Nov. 4, 1953.

Adams, Duque & Hazeltine, Los Angeles, Cal., James E. Wallace, Los Angeles, Cal., for plaintiff.

Dockweiler & Dockweiler, Los Angeles, Cal., by Frederick C. Dockweiler, Los Angeles, Cal., for defendant Patricia G. Moore.

J. W. Mullin, Jr., Hollywood, Cal., for defendants Telford I. Moore, Jr., and Antonia Jane Thomas, minors.

J. W. Mullin, Jr., as guardian ad litem of Telford I. Moore, Jr., and Antonia Jane Thomas, minors, in pro. per.

Theodore A. Chester, Los Angeles, Cal., for defendants Thomas Richard

Moore, a minor, and Hazel Moore Johnston, as guardian of person and estate of Thomas Richard Moore, a minor.

Charles F. Lowy, special counsel for administratrix, Los Angeles, Cal., for Telford Ira Moore's Estate.

TOLIN, District Judge.

In this interpleader action the Manufacturers Life Insurance Company has deposited into Court the accrued death benefits of a certain insurance policy and seeks an adjudication as to whom it shall make further payments. Patricia G. Moore, the primary beneficiary and widow of decedent, seeks payment of accumulated funds and future installments to her. She is opposed by her daughter by a previous marriage, Antonia Jane Thomas, and by the child of her marriage with decedent, Telford I. Moore, Jr. These children are secondary beneficiaries under the policy and by its terms receive the death benefit in the event Patricia G. Moore should not survive her husband. Patricia G. Moore, as administratrix of the estate of her deceased husband, also claims the fund in her representative capacity. The case involves a basically simple fact situation and certain legal principles which this Court has previously discussed in Prudential Ins. Co. of America v. Harrison, D.C., 106 F.Supp. 419, where the controlling authorities are cited.

The case has been submitted upon the transcript and certain other parts of the record in The People of the State of California v. Patricia G. Moore, a case wherein Mrs. Moore was prosecuted upon a charge of murder and the Superior Court upon a verdict adjudicated that she was guilty of manslaughter in connection with the death of her husband, the insured.

■ No one urges *res adjudicata* here, recognizing the applicability of the well-known rule that to apply the principle would require that the murder trial be between the same litigants, whereas the record shows that the litigants here were not all adversaries there. This Court must make its own analysis of the facts and reach its own conclusions.

■■ After several years of matrimony, Dr. Moore, the now decedent, and the present litigant Patricia G. Moore, came into an unhappy period in their domestic life. Each was cruel to the other. Although the cruelty often included acts of violence, there was never any serious physical injury to either party. They were in divorce litigation at the time of the decedent's death. It is not necessary to here give written analysis of the long sordid course of mistreatment, nor to determine which spouse committed the greater fault prior to the fatal occurrence. Finally Mrs. Moore, having taken some pains to assure that she would be alone with her husband, received him as an expected caller at the home (from which he had moved). In the course of the visit they argued and he struck her; and she (the only one armed) shot and killed him. She claims, but does not prove, self-defense. The evidence establishes that although there was provocation, there was clearly not self-defense. Mrs. Moore, without needing to do so for her protection, wilfully, and with malice, finally resolved all of the parties' matrimonial disputes by shooting Dr. Moore with intent to kill him. She succeeded in this. The effect of her tortious act upon her right to the proceeds of the insurance policy constitutes this Court's main legal question in the case. At the outset of consideration of this problem, the inapplicability of a Statute which at first blush might be thought controlling, should be noted. Section 258, California Probate Code, provides:

"No person convicted of the murder of the decedent shall be entitled to succeed to any portion of the estate; * * *."

The inapplicability of this Statute is more fully treated in Prudential Ins. Co. of America v. Harrison, supra. It will suffice here to say that this is not a probate case and the rights of the beneficiaries here arise under the laws of contract and insurance rather than under the Probate Code. The Statute mentioned

is a probate law only and refers to the effect of a criminal court judgment and not to the facts upon which such a judgment rests. It is apparent the widow is barred from recovery under the rules stated in the Prudential Ins. Co. of America v. Harrison opinion, but by operation of other statutes than the one just declared inoperative in an insurance case.

The alternate beneficiaries urge that Sections 2224 and 3517, Civil Code of California, raise bars to the primary beneficiary recovering proceeds of the policy. These Statutes are laws of general rather than exclusively probate application. They provide:

Section 2224:

"(Involuntary trust resulting from fraud, mistake, etc.) One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it. (Enacted 1872.)"

Section 3517:

"No one can take advantage of his own wrong. (Enacted 1872.)"

This Court quotes the treatment of these Statutes to this kind of case as it was given in Prudential Ins. Co. of America v. Harrison, supra, 106 F.Supp. at page 422:

"Although Section 2224, Civil Code of California, has usually been applied to property transfer and fraud cases, the California Supreme Court in Beck v. West Coast Life Insurance Co., 38 Cal.2d 643, 241 P.2d 544, 545 [26 A.L.R.2d 979], stated that these statutes barred a murderer from recovery of insurance.

"'* * * Under the terms of the policy the murderer is entitled to the proceeds, but since it would be unconscionable to allow him to profit from his own wrong, he may neither receive nor retain them. Drown v. New Amsterdam Casualty Co., 175 Cal. 21, 23, 165 P. 5; West Coast Life Ins. Co. v. Crawford, 58 Cal. App.2d 771, 773, 138 P.2d 384; see also cases collected in 91 A.L.R. 1486. * * *

"'"The general principle that precludes a wrongdoer from unjustly enriching himself has been codified in sections 2224 and 3517 of the Civil Code and applied in a variety of situations "(W)here the defendant has by his own wrong obtained the legal title to property, a trust as to such property will be imposed upon him in favor of the party injured. This principle is a familiar one, and is based upon the maxim, which has been carried into our Code (Civ.Code, section 3517), that no one may profit by his own wrong. The instances of its application are as various nearly as the ways in which property can be wrongfully acquired."'"

By reason of a strongly declared public policy, the widow is barred from taking under the insurance policy. The problem of determining who should take the proceeds in her stead has been treated in Beck v. West Coast Life Insurance Co., 38 Cal.2d 643, 646, 241 P.2d 544, 546, 26 A.L.R.2d 979:

"* * * when the primary beneficiary of an insurance policy murders the insured. It will ordinarily be impossible to determine who would have received the proceeds but for the murder. The murderer himself might have received them through the natural death of the insured. The insured might have outlived the murderer but not the alternative beneficiary, or the insured might have changed the beneficiaries altogether. * * * *In any event all doubts must be resolved against the murderer.* Whatever the probability that he would have received the proceeds had he not murdered the insured, *he cannot be allowed to insure that result by his own wrong-*

*ful conduct.* Cleaver v. Mutual Reserve Fund Life Ass'n, 1892, 1 Q.B. 147, 160; see 3 Scott on Trusts, § 494.1, p. 2407." (Emphasis supplied.)

In cases where primary beneficiaries are barred from taking because of similar circumstances, the courts have recognized these possibilities for distribution of the death benefit: (1) Payment to the insured's estate; (2) Payment on basis of mortality tables to persons most likely to take had murder not been committed; or (3) Payment to the named alternative beneficiary. In this case, the one to adopt is clear because of prior action in comparative cases. The leading California authority, Beck v. West Coast Life Insurance Co., 38 Cal.2d 643, 646, 241 P.2d 544, 546, 26 A.L.R.2d 979, states the rule applicable here:

> " * * * The third solution is to allow the alternative beneficiary to recover the proceeds. Metropolitan Life Ins. Co. v. McDavid, D.C., 39 F.Supp. 228; Neff v. Massachusetts Mutual Life Ins. Co., Ohio Com.Pl. 96 N.E.2d 53, 54–55; * * *, Acquisition of Property by Wilfully Killing Another—A Statutory Solution, 49 Harv.L.Rev. 715, 742.

> "We have concluded that the third solution should be adopted. * * * "

The California Supreme Court quoted from Metropolitan Life Ins. Co. v. McDavid, D.C., 39 F.Supp. 228, at page 233, where it was held:

> " * * * rights of the parties shall be determined exactly as they would have been if Beatrice McDavid (the killer) had died prior to the death of her husband * * * ."

With respect to insurance generally, it was held, in Re Estate of Ward, 127 Cal. App. 347, 15 P.2d 901, that the beneficiary takes by contract and not by succession and the benefits of the insurance are not a part of the estate.

Turner v. Metropolitan Life Ins. Co., 56 Cal.App.2d 862, 133 P.2d 859, holds that in cases involving the right to the proceeds of a life insurance policy, the law of contracts and not the law of inheritance is controlling.

■ Designation of a beneficiary in a life insurance policy initiates in the beneficiary's favor an inchoate gift of policy proceeds which, if not revoked, vests in the beneficiary at the time of the insured's death. Travelers' Ins. Co. v. Fancher, 219 Cal. 351, 26 P.2d 482.

■ From the foregoing, it is clear that the parties who take the insurance benefit which would have gone to the widow had it not been for the murder, are the alternate beneficiaries.

In Prudential Ins. Co. of America v. Harrison, supra, 106 F.Supp. at page 425, the Court treated the next question presented as follows:

> "The question next arises: From what is this beneficiary barred? He is not called upon to forfeit any property already vested in him. The equitable maxim is a hand which raises a bar to recovering profit. It is not a scoop to lift from him what he has already properly acquired.

> "Penal Code of California, Sec. 2604:

> " '(Forfeiture of property on conviction.) No conviction of any person for a crime works any forfeiture of any property, except in cases in which a forfeiture is expressly imposed by law; * * * .' Added by Stats.1941, ch. 106, § 15.

> "The definition of community property is drawn from certain sections of the Civil Code of California which read as follows:

> " '§ 162. Separate property of the wife. All property of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is her separate property. The wife may, without the consent of her husband, convey her separate property. (Enacted 1872.)'

> " '§ 163. Separate property of the husband. All property owned by the husband before marriage, and that

acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property. (Enacted 1872.)'

" '§ 161a. (Interests in community property.) *The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests* under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in the community property. (Added by Stats.1927, p. 484.)' (Emphasis supplied.)"

See In re Freitas, D.C., 16 F.Supp. 557, at page 560:

" * * * As to money deposited in a bank by husband or wife, after marriage, the presumption is that it is community property. (Citing cases.) A like presumption applies to *all* personal property acquired after marriage, no matter in whose name the title stands. * * *." (Emphasis theirs.)

See also, Cal.Jur.Supp., Vol. 3, Sec. 61, p. 553:

"Presumption That Property Is Community.—In General.—The presumption that all property acquired during the marriage, except that acquired by a married woman, or by a married woman and another, by an instrument in writing, is community property, is fundamental in the community system, and has been frequently announced * * *."

In re Estate of Jolly, 196 Cal. 547, 553, 238 P. 353, 355, holds:

" 'The disputable presumption raised by section 164, Civil Code, is a form of evidence under section 1957, Code Civ.Proc. It may be controverted by other evidence, direct or indirect; but unless so controverted, the court or jury is bound to find according to the presumption.' Staf-

ford v. Martinoni, 192 Cal. 724, 221 P. 919.

" 'The community (property) generically embraces all property belonging to the spouses, except such as the statute specifically removes from its operation. *Community property is the rule, separate property the exception thereto.* * *' " (Emphasis supplied.)

De Funiak's "Principles of Community Property" (1943) treats of the many circumstances wherein interests in life insurance must be measured by community property law. Of the particular fact situation in this case, the work says, at p. 214:

" * * * it is usually considered by most courts that, when a spouse, during marriage, takes out a policy on his or her own life and the premiums are paid from community funds, the policy represents community property. * * *"

Among the citations given by the author in support of his text are In re Castagnola's Estate, 68 Cal.App. 732, 230 P. 188; and In re Brown's Estate, 124 Wash. 273, 214 P. 10.

See also Dixon Lumber Company v. Peacock, 217 Cal. 415, 19 P.2d 233. The evidence is sufficient to bring the presumption into operation here. Except as it clearly brings the presumption into play, the evidence is silent upon the character of the money (as community or separate) used to pay the premiums.

In the case just quoted at length, this Court adjudged that the community interest in the death benefit as of the time of death was a one-half interest, and divided the death benefit from the policies equally between the killer-beneficiary and an alternate beneficiary. The community property rights of the husband were not argued in that case, and without the benefit of briefs or argument on the point, the Court *sua sponte* reached a decision which in general will be applied here, but in one particular the application there lacked the fine definition now correctly suggested by counsel for the children.

It is now emphasized that to allow one-half of the death benefit is to allow a profit to result from the murder, for the death benefit is more than the total premiums paid in. The contention is made that one-half the total premiums should be the maximum allowed Mrs. Moore. However, the surrender value of the policies immediately before death is different than one-half of the total premiums paid and the primary beneficiary has a vested interest to the extent of one-half of the surrender value of the policy immediately prior to the tort. The spouse who takes one-half of the community interest under circumstances which limit her to not profiting from her own wrong must take that interest as it existed the moment before the wrong was done. On this principle, the proceeds of the policy shall be distributed as follows:

One-half of the surrender value on the date of death, but during life, to Patricia G. Moore, the remainder to be divided equally between the children named in the policy as alternate beneficiaries. The estate takes nothing.

Counsel for Telford I. Moore, Jr., and Antonia Jane Thomas will submit findings of fact, conclusions of law and judgment. They should be drawn so as to direct future payments of installments as they hereafter accrue to be made as herein indicated, and to forthwith distribute the funds which have been deposited into the registry of the Court.