[Civ. No. 40040. First Dist., Div. Two. May 16, 1978.]

AETNA LIFE INSURANCE COMPANY, Plaintiff, v.
FLORA PRIMOFIORE et al., Defendants and Appellants;
DINO PRIMOFIORE et al., Defendants and Respondents.

COUNSEL

Frederick L. Hilger for Defendants and Appellants.

Robert R. Elledge for Defendants and Respondents.

## OPINION

KANE, J.—Flora Primofiore, putative spouse of decedent Vasco Primofiore, and Ronald McCullough, her son and heir at law, appeal from the findings and order filed June 11, 1976, which found that, by virtue of the fact that the insured decedent met his death at the hands of appellant Flora under circumstances resulting in a conviction of voluntary manslaughter, neither appellant was entitled to succeed to or be permitted to receive any portion of the insurance proceeds paid into court by Aetna Life Insurance Company. The portion of the proceeds at issue were ordered paid to respondents Dino Primofiore and Gina Primofiore Roberts, the son and daughter of decedent Vasco.

The facts of the case are not disputed. Respondents Dino Primofiore and Gina Primofiore Roberts are Vasco's children by his marriage to

Frances. Frances obtained an interlocutory decree of divorce in January 1956; the parties thereafter reconciled and resided together until the latter part of 1957, when they again separated. No final decree of divorce was ever entered.

Vasco was employed by Pacific Lumber Company which had a group insurance policy for its employees. The premiums were paid by Pacific. On July 26, 1962, Vasco requested issuance of the insurance to which he was entitled and designated Dino and Gina his beneficiaries.

On July 24, 1965, Vasco married Flora in Reno, Nevada, and they lived as husband and wife until Flora shot Vasco, said shooting causing his death on August 6, 1974. Flora pled guilty to voluntary manslaughter.

On December 9, 1965, Vasco had changed the beneficiaries on his insurance policy to provide that one-half should go to Flora, whom he designated as his wife; one-quarter to Dino, his son; and one-quarter to Gina, his daughter. The policyholder of the policy here in question remained Vasco's employer, Pacific Lumber Company, and said company continued to pay the premiums. The policy had no cash value. The benefits totaled $10,000.

Following Vasco's death, Aetna Life Insurance Company paid one-quarter of the proceeds to each of Vasco's children, Dino and Gina, and filed its complaint in interpleader and for declaratory relief alleging, inter alia, that there were conflicting or potentially conflicting claims to the $5,000 which remained to be paid. Aetna asked the court to adjudicate the claims. Dino and Gina answered and cross-complained for declaratory relief and alleged that Frances, their mother, assigned to them all her right, title, and interest under the policy. Flora and Ronald filed a motion for summary judgment and answered the cross-complaint. Hearing was held, and summary judgment was entered in favor of plaintiff insurance carrier. The remaining parties stipulated that the trial court could rule upon the matter as if each side had made a motion for summary judgment in its favor. On such stipulation, the court ordered "that the funds on deposit herein be paid to the defendants Dino Primofiore and Gina Primofiore Roberts, and the defendants Flora Primofiore and Ronald McCullough take nothing." This appeal follows.

Appellant Flora concedes that she cannot claim the proceeds of the insurance policy under any provision of the Probate Code[1] or as a contractual beneficiary under the insurance policy contract because her act in slaying Vasco precludes her recovery under either theory. She argues, however, that "[h]er right to recovery is based upon the fact that she was the owner of a vested one-half interest in the policy by virtue of her community status and that such vested community property right is not forfeited by her action in slaying Vasco." She further contends that appellant Ronald McCullough as her only and sole heir at law is entitled to the community interest of his mother "in the event she be barred from takeing [*sic*] the policy or any portion thereof by reason of her commission of the voluntary manslaughter."

Respondents do not argue that Flora is not entitled to a community interest in the insurance proceeds. They do contend, however, that in order to prevent unjust enrichment and to preclude the slayer from profiting from her wrongful conduct, "[t]he proper solution which protects the interests of society as well as the slayers [*sic*] is to permit the slayer to retain only that which [s]he had immediately before [her] wrongful act."

The statutory law of California declares a public policy barring one who has deliberately and without justification killed another from profiting thereby. (Prob. Code, § 258, fn. 1, *ante*; Civ. Code, §§ 2224, 3517; *Wilson* v. *Wilson* (1978) 78 Cal.App.3d 226, 232 [144 Cal.Rptr. 180], hg. den., Apr. 26, 1978.)[2] It matters not whether profit be in the form of inheritance (cf. *Estate of Kramme* (1978) 20 Cal.3d 567 [143 Cal.Rptr. 542, 573 P.2d 1369]),[3] the proceeds of insurance on the decedent's life (*Beck* v.

---

[1]Probate Code section 258 provides in pertinent part: "No person who has unlawfully and intentionally caused the death of a decedent . . . shall be entitled to succeed to any portion of the estate or to take under any will of the decedent; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter or under the will of the decedent. A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section."

[2]Civil Code section 2224 provides: "One who gains a thing by fraud . . . or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Civil Code section 3517 provides: "No one can take advantage of his own wrong."

[3]While the *Kramme* court declined to construe Probate Code section 258 in conjunction with Civil Code sections 2224 and 3517, it "noted that the courts of this state have used sections 2224 and 3517 outside the probate context only to prevent a person who *intentionally* killed from benefitting from that unlawful act." (20 Cal.3d at p. 577, fn. 11.)

*West Coast Life Ins. Co.* (1952) 38 Cal.2d 643 [241 P.2d 544, 26 A.L.R.2d 979]; cf. *Estate of McGowan* (1973) 35 Cal.App.3d 611, 615-616 [111 Cal.Rptr. 39]), or survivorship in joint tenancy (*Johansen* v. *Pelton* (1970) 8 Cal.App.3d 625 [87 Cal.Rptr. 784], hg. den.).

No California appellate decision deals directly with the issue before us (see Annot., Insurance- Homicide by Beneficiary (1969) 27 A.L.R.3d 794, 819): If one spouse who has been named as beneficiary of a policy on the life of the other spouse kills the latter, is the value of the vested community property interest recovered by surviving spouse limited to the value of that interest immediately prior to the commission of the wrongful act, or to the community property interest in the proceeds of the policy? While language in *Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 404 [6 Cal.Rptr. 13, 353 P.2d 725],[4] suggests that wife is entitled to her community share in the proceeds of the policy, that case is distinguishable on its facts for it did not arise from the homicide of one spouse by the other spouse. *New York Life Ins. Co.* v. *Cawthorne* (1975) 48 Cal.App.3d 651, 655 [121 Cal.Rptr. 808], hearing denied, relies on *Tyre, supra*; however, the issue was not directly addressed because there wife, who killed her husband, defaulted in the interpleader action, and the proceeds of the policy were awarded to the couple's daughter.

In *Prudential Ins. Co. of America* v. *Harrison* (S.D.Cal. 1952) 106 F.Supp. 419, four insurance policies on wife's life were community property and husband was named as beneficiary. Husband pled guilty to manslaughter of wife. The court held that husband could not profit from his wrong, and he was precluded from recovering proceeds of wife's interest in the policy, but he was not deprived of his own vested interest therein as owner of one-half the community property. It divided the proceeds of the life insurance policies equally between husband and the administratrix of wife's estate.

In *Manufacturers Life Ins. Co.* v. *Moore* (S.D.Cal. 1953) 116 F.Supp. 171, the widow and primary beneficiary was convicted of manslaughter in connection with the death of her husband, the insured. The secondary

---

[4]"Nevertheless, it is settled that even though the insurance contract provides that the insured husband has the right to change the beneficiary without the wife's consent when she is named as such, any such change of beneficiary without her consent and without a valuable consideration other than substitution of beneficiaries is voidable, and after the death of the husband the wife may maintain an action for her community share in the proceeds of the policy." In *Tyre,* insurance premiums were paid from community funds (54 Cal.2d at p. 401); in the instant case, husband's employer is the policyholder and paid the premiums.

beneficiaries under the policy were widow's daughter by a previous marriage and the child of her marriage with decedent. The *Moore* court discussed Civil Code sections 2224 and 3517 (fn. 2, *ante*), reviewed *Beck v. West Coast Life Ins. Co., supra,* and concluded at page 177:

"It is now emphasized that to allow one-half of the death benefit is to allow a profit to result from the murder, for the death benefit is more than the total premiums paid in. The contention is made that one-half the total premiums should be the maximum allowed Mrs. Moore. However, the surrender value of the policies immediately before death is different than one-half of the total premiums paid and the primary beneficiary has a vested interest to the extent of one-half of the surrender value of the policy immediately prior to the tort. The spouse who takes one-half of the community interest under circumstances which limit her to not profiting from her own wrong must take that interest as it existed the moment before the wrong was done. On this principle, the proceeds of the policy shall be distributed as follows:

"One-half of the surrender value on the date of death, but during life, to Patricia G. Moore, the remainder to be divided equally between the children named in the policy as alternate beneficiaries. The estate takes nothing."

*Succession of Butler* (La.App. 1962) 147 So.2d 684, hearing denied, 150 So.2d 584, held that when wife forfeits her rights as beneficiary of a policy on the life of her husband by feloniously killing him, husband's estate becomes the beneficiary, and the insurance proceeds are not community property but property of decedent's separate estate. The court reasoned that where wife forfeits her right to take under the policy by the killing, the husband's separate estate becomes the beneficiary because his death dissolved the community. "Any property acquired by his estate after death belongs to his separate estate, not the community. [¶] Furthermore, it would be illogical and against public policy to hold that the wife, denied recovery of the whole for feloniously killing her husband, yet could recover half as to her community interest. [Citations.] [¶] The only interest the wife could have would be the recovery from her husband's estate half the community funds used in payment of the insurance premiums." (147 So.2d at p. 686.)

We deem our language in *Estate of McGowan, supra,* 35 Cal.App.3d at page 616, appropriate to the case before us: "As the court put it in *N. Y. Mut. Life Ins. Co.* v. *Armstrong,* 117 U.S. 591, 600 [29 L.Ed. 997, 1000, 6

S.Ct. 877]: 'It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had wilfully fired.' '[T]he social interest served by refusing to permit the criminal to profit by his crime is greater than that served by the preservation and enforcement of legal rights of ownership.' [Fn. omitted.]"

 We conclude that, in order to carry out the declared public policy of this state that one who has deliberately and without justification killed another shall not profit thereby, when one spouse kills the other, the value of the slayer's interest in any community property must be determined as of the moment before the wrongful act was committed. No community funds were used to pay the premiums of the policy here at issue, and prior to the shooting, the policy had no cash value. The trial court correctly ruled that appellants take nothing and awarded the remaining proceeds to decedent's son and daughter.

Order affirmed.

Taylor, P. J., and Rouse, J., concurred.